In the Matter of the Claim of WILLIAM ROBINSON et al., Respondents. MARTIN P. CATHERWOOD, as Industrial Commissioner, Appellant.

Third Department, November 4, 1960.

*Louis J. Lefkowitz, Attorney-General* (*Frank E. Sacco, Paxton Blair* and *Samuel Stern* of counsel), for appellant.

*Jack Goodman* for respondents.

GIBSON, J.  The Industrial Commissioner appeals from a decision of the Unemployment Insurance Appeal Board which held that claimants were entitled to unemployment insurance benefits for the period July 29, 1957 to August 11, 1957 during which time the employer's plant was shut down pursuant to the vacation provisions of a collective bargaining agreement between claimants' labor union and the employer.  The agreement provided for vacations and vacation pay based on length of service and it was further agreed that the employer might elect to close the plant for any two consecutive weeks between July 1 and September 1 as the vacation period for the plant. Claimants-respondents and the other employees who have stipulated to be bound by the decision were without sufficient seniority to become entitled to vacation pay.  Some of the claimants asked for maintenance work during the shutdown period, but none was available, and all of them returned to work when the plant reopened.

The facts are not in dispute; and it seems to be conceded that unless the 1958 amendment to the statute (Labor Law, § 591) is retroactive, the decision must be reversed and benefits denied in accordance with *Matter of Naylor* (*Shuron Optical Co.— Corsi*) (306 N. Y. 794) which established the rule that an agreement such as this signifies the union's consent on behalf of its members that the plant be shut down for the period fixed and effects the voluntary withdrawal of the employees from the labor market for that interval.

The board, however, gave retroactive effect to the amendment (L. 1958, ch. 387, § 13) which added to section 591 of the Labor Law a new subdivision 3, headed " Vacation period " and dealing in great detail with the definition of that term and with rights to benefits and tests of eligibility therefor during periods of that nature; and providing by paragraph (e) that an agreement " to a plant or department shut down for vacation purposes is not of itself to be considered either a withdrawal by such [agreeing] employee from the labor market during the time of such vacation shut down or to render him unavailable for employment during the time of such vacation shut down." Under the act, the effective date of the new subdivision 3 was March 26, 1958, on which date there was pending before the board the appeal in this case, which was from a decision of a Referee affirming (upon the authority of the *Naylor* case

[*supra*]) the initial determination of the Industrial Commissioner denying benefits. The board on March 28, 1958 affirmed but subsequently reopened the case and, by the decision which has now come to us, reversed the Referee's decision. In our view the decision of the board was correct.

The added subdivision 3 seems to us one of those remedial statutes which are " designed to correct imperfections in the prior law * * * [and] are to be liberally construed so as to spread their beneficial results as widely as possible, and they therefore constitute an exception to the general rule that statutes are not to be given a retroactive operation." (McKinney's Cons. Laws of N. Y., Book 1, Statutes, § 54 and cases cited.) A number of factors persuade us to that conclusion. Principal among them is the history of the enactment. In a message to the Legislature requesting legislation, Governor Harriman said: " One of the knotty problems in unemployment insurance involves vacations. The courts have interpreted the law in such a way as to make the fund liable for benefits in some circumstances in which workers appear also to be receiving vacation pay. At the last session my Administration recommended an amendment of the law to bar such payments, while protecting the workers' right to benefits during disguised vacations when they are really layoffs." (N. Y. Legis. Annual, 1958, p. 353.) Equally pertinent are the remarks of the Joint Legislative Committee on Unemployment Insurance concerning a bill offered to ameliorate the " baffling problem " of vacations. (Although the particular bill was vetoed, its provisions with respect to vacations were those ultimately adopted.) The committee said: " The difficulty has been to determine, under widely varying practices and bewildering differences in the provisions of controlling collective labor agreements, whether, *first,* any given payment is really a payment for a vacation and, *second,* whether a lay-off is in fact a respite from work for purposes of rest or whether it is no more than part of a more extended lay-off due to economic causes." (Report of Joint Legis. Comm. of Unemployment Ins.; N. Y. Legis. Doc., 1958, No. 31, p. 53.) Reference was then made (p. 53) to certain criteria which had been formulated by the Advisory Council on Employment and Unemployment Insurance for the guidance of the administrators in passing upon specific situations and had " proven successful in operation." From this significant statement, the report continued (p. 53): " It is the purpose of this bill to enact these criteria into legislation with such clarifications and modifications as experience dictates to be desirable. The bill is also intended to correct some of the consequences of certain court

decisions in this area.'' Later in the report (p. 56) the committee specifically referred to the *Naylor* case (*supra*) and to the '' confusion '' which had resulted from it, and, after outlining the court's holding, stated: '' The ruling is based on an artificial premise, since a union represents workers only for the purposes of collective bargaining with respect to the terms of their employment and is not their agent in personal matters such as actively remaining in the labor market seeking work. And because the ruling is artificial it has worked much hardship. It is the purpose of the bill (subdivision 3e) to abrogate this ruling completely and to provide that an agreement between an employer and a union to shut down the plant for vacation purposes, whether that agreement be express or implied, is not of itself to be considered as withdrawing any of the employees from the labor market thereby making them unavailable for work. Thus, a claimant thrown out of work by reason of such a shut-down and receiving no vacation pay for the period of shut-down would be in a position to claim benefits.'' Neither the committee's report nor the Governor's message is necessary to the conclusion that the amendment was intended to be remedial of a patent injustice to employees receiving neither pay nor benefits but each summons action and in each the implication of urgency and immediacy is plain. The committee's finding of '' confusion '' in administration and the expressed purpose to '' abrogate * * * completely '' the considerable '' hardship '' said to have followed *Naylor* would seem likely to impel curative measures of complete and immediate effect.

Respondents urge that additional support for the theory that such was the intent is to be found in the variances between the provisions as to effective dates within chapter 387, of which the amendment to section 591 is but a part. Thus, it was provided that certain sections should take effect on the first Monday after the act should be signed, others on June 30, 1958, on July 1, 1958 or on June 30, 1959, some being expressly given retroactive effect in greater or less degree; but it was provided that sections 13, 16 and 17 should '' take effect immediately ''. Section 13, constituting the amendment in issue, was thus grouped with two sections embodying procedural amendments, which, under recognized principles, would normally be deemed effective as to pending proceedings such as this. The arrangement may perhaps suggest that the Legislature considered that section 13 also partook of a procedural nature in that by establishing '' criteria '' and otherwise it sought to clear the '' confusion '' in administrative procedure noted by the Joint Committee; and,

instead of rewriting the basic substantive provisions respecting entitlement to benefits generally, merely required that in one particular category of cases these be given a construction different from that theretofore imposed in judicial and administrative proceedings under the act.

It is unnecessary, however, to classify the statute as procedural or otherwise in view of our stated conclusion that it is, in either case, so clearly and substantially remedial as to require retroactive effect. The requirement seems especially compelling in this area of beneficial legislation; and we have recently held that certain generally comparable amendments to the Workmen's Compensation Law and the Disability Benefits Law — statutes rationally related to this — are to be deemed retrospective. (See *Matter of Mlodozeniec* v. *Worthington Corp.,* 9 A D 2d 21, affd. 8 N Y 2d 918; *Matter of De Concilus* v. *Juney Juniors,* 9 A D 2d 17.)

The decision should be affirmed, with costs to respondents.

BERGAN, P. J., COON, HERLIHY and REYNOLDS, JJ., concur.

Decision affirmed, with costs to respondents.