**In re Bjarne SKJETNE, Jr. and Elaine Skjetne, Debtors.**

**Bankruptcy No. 97–10033.**

United States Bankruptcy Court,
D. Vermont.

July 25, 1997.

G. Glinka, J. Schwidde, Glinka & Schwidde, Cabot and Rutland, VT, for Debtors.

B. Lewis, R. Obuchowski, Obuchowski Law Office, Bethel, VT, for Trustee R. Obuchowski.

M. Carter, S. Hart, D. Wolinsky, Saxer Anderson Wolinsky & Sunshine, P.C., Burlington, VT, Amicus Curiae.

FRANCIS G. CONRAD, Bankruptcy Judge.

## MEMORANDUM OF DECISION DENYING TRUSTEE'S OBJECTION TO HOMESTEAD EXEMPTION

Trustee objects [1] to Debtors' claim of entitlement to the benefits of an increase in the Vermont homestead exemption. At the time of Trustee's objection, similar objections in two cases being jointly administered, *In re Euber*, Chapter 7 Case No. 97–10063, and *In re Lavoie*, Chapter 7 Case No. 97–10193, were also pending before the Court. The law firm of the Trustee in this case represents the Debtors in those two cases. Accordingly, we permitted the attorney for objecting creditors in the *Euber* and *Lavoie* cases to intervene as *amicus curiae* in this case, and to take the laboring oar in support of the Trustee's objection.

### FACTS

The Vermont legislature increased the homestead exemption from $30,000 to $75,000, effective Jan. 1, 1997. 27 V.S.A. § 101. Debtors filed for their relief under Chapter 7 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*, on Jan. 8, 1997.

Debtors valued their home at $120,000 on Schedule A of their petition. They claimed $89,574.74 of the homestead's value as exempt, $75,000 under the new homestead exemption, and $14,574.74 under their joint wildcard exemption under 12 V.S.A. § 2740(7). We approved the Trustee's motion to sell Debtors' home on March 5, 1997, and the sale closed next day with the purchasers paying $120,000.[2] Trustee disbursed $44,574.74 to Debtors, which represents the total of Debtors' $14,574.74 wildcard exemption, and the $30,000 homestead exemption in effect prior to Jan. 1, 1997. Trustee retained the $45,000 balance, representing the amount of the increase in the Vermont homestead exemption, and filed an objection to Debtors' claim to it.

We hold that state law limits the increased exemption to debts incurred after its effective date, but that federal bankruptcy law expands the exemption to all prepetition debt.

### PARTIES' ARGUMENTS

Trustee objects that "a majority, if not all, of the claims of the creditors existed prior [to] the effective date of the increased homestead exemption, January 1, 1997." Trustee's Objection, 1. Debtor's Opposition argues first that Vermont's homestead exemption is a remedial statute which is to be given "the most liberal construction,'" *Parrotte v. Sensenich (In re Parrotte)*, 22 F.3d 472, 474 (2d Cir.1994), *quoting Hooper v. Kennedy*, 100 Vt. 314, 316, 137 A. 194 (1927). *See also, Mercier v. Partlow*, 149 Vt. 523, 524, 546 A.2d 787 (1988) ("Because the homestead statutes are remedial, the statutes are to be interpreted liberally to accomplish their remedial purpose."). Second, Debtors argue that a debtor's homestead rights are ordinarily fixed as of the date the bankruptcy petition is filed. This point is established indisputably by the Code and federal and state case law. 11 U.S.C. § 522(b)(2)(A); *In re Girard*, 98 B.R. 685, 688 (Bkrtcy.D.Vt.1989) ("The cases are legion in support of pinning the point of valuation of property with respect to determining a debtor's ability to claim an exemption, as well as the rights of the Trustee and creditors, to the time of the filing of the bankruptcy petition."); *Bernstein v. Held (In re Bernstein)*, 62 B.R. 545, 550 (Bkrtcy. D.Vt.1986) ("homestead rights are deter-

---

1. Our subject matter jurisdiction over this controversy arises under 28 U.S.C. § 1334(b) and the General Reference to this Court under Part V of the Local District Court Rules for the District of Vermont. This is a core matter under 28 U.S.C. §§ 157(b)(2)(A), (B) and (O). This Memorandum of Decision constitutes findings of fact and conclusions of law under F.R.Civ.P. 52, as made applicable by F.R.Bkrtcy.P. 7052.

2. Debtors' mortgagee had inadvertently discharged its mortgage, leaving the entire homestead unencumbered.

mined as of the date of the filing of the petition for relief"); *In re Avery*, 41 B.R. 224, 226 (Bkrtcy.D.Vt.1984) ("As a general rule homestead rights are determined as of the date of the filing of the petition for relief."); *Hooper, supra*, 100 Vt. at 316–17, 137 A. 194 ("The question of exemption relates back to the time of the filing of the petition in bankruptcy.").

Debtors also note that most courts that have examined the issue uniformly apply the first two principles with the result that debtors receive the benefit of a newly increased exemption, despite pre-existing debt. The only contrary examples Debtors supply are from Connecticut, which, until recently, was one of six states without a homestead exemption. Its new homestead exemption, effective October 1, 1993, was expressly limited by the statutory language "to any lien for any obligation or claim arising *on or after* said date." A number of Connecticut state and federal courts have enforced the limitation. *See, cases collected at Gernat v. Belford (In re Gernat)*, 192 B.R. 601, 604 (D.Conn.1996), *aff'd per curiam*, 98 F.3d 729.

Debtor's Objection concluded,

if the Vermont Legislature had intended to limit the application of the increase of the homestead exemption it could have certainly done so as Connecticut had. That Vermont did not so expressly limit the effectiveness of the increased homestead exemption requires this Court to conclude that there is no such limitation of the increased homestead exemption in Vermont to post-amendment debt only.

Amicus Curiae's "Brief in Support of Trustee's Objection" persuades us that Vermont's legislature has in fact limited the application of the homestead exemption by statute. Amicus points us to the statutory rule of construction contained in 1 V.S.A. § 214(b), which provides, in pertinent part:

The amendment or repeal of an act or statutory provision, . . . shall not:

. . . . .

(2) Affect any right, privilege, obligation or liability acquired, accrued or incurred prior to the effective date of the amendment or repeal;

. . . . .

(4) Affect any suit, remedy or proceeding to enforce or give effect to any right, privilege, obligation or liability acquired, incurred or accrued under the amended or repealed provision prior to the effective date of the amendment or repeal; and the suit, remedy or proceeding may be instituted, prosecuted or continued as if the act or provision had not been repealed or amended.

Amicus contends that, "In Vermont, the Legislature strictly forbade the retroactive effect of new legislation, through 1 V.S.A. § 214(b), just as the Connecticut Legislature limited the retroactive effect of its new homestead exemption." Amicus Brief, 10. We agree. Connecticut provides a specific rule that directly bars retroactive application of its new homestead exemption, while Vermont relies on a general statutory rule of construction that applies to all amendments of existing legislation.[3] The effect is the same. The increased homestead exemption indisputably "affect[s]" Debtors' "liability" for debt "incurred prior to the effective date of the amendment or repeal," as well as unsecured creditors "rights" with respect thereto. 1 V.S.A. § 214(b)(2).

We begin our analysis by disposing of a weaker argument Amicus makes, because it illustrates a similar error Debtors make in their arguments about Vermont law. Because 1 V.S.A. § 214(b)(4) applies to remedies, Amicus contends, the remedial nature of the homestead exemption is irrelevant. Amicus Brief, 10–11. "Debtors' Reply to Amicus Brief" swiftly disposes of the "transparent sleight-of-hand" Amicus uses to conflate two distinct principles. Debtor's Reply, 6. As Debtor notes, "[i]n the first use 'remedy' refers to pending judicial process; in the other 'remedial' signifies legislative intent." *Id.* Thus, the fact that 1 V.S.A. § 214(b)(4) includes the word "remedy" does not auto-

---

**3.** The statutory rule of construction governing the applicability of new legislation, as opposed to amendments to existing legislation, is found at 1 V.S.A. § 213. *Myott v. Myott*, 149 Vt. 573, 575–76, 547 A.2d 1336 (1988).

matically extend the statute's preclusive effect to all "remedial" legislation. A remedy may or may not be remedial.

■ Debtors commit the same error of conflation. Debtors point us to the Vermont Supreme Court's acknowledgment that "[w]hile in general, new statutes do not apply to cases that are pending at the time of the effective date of the new statute, there is an exception for statutes that are solely procedural or are remedial in nature." *Id., quoting Myott v. Myott,* 149 Vt. 573, 575, 547 A.2d 1336 (1988). Thus, argues Debtor, "1 V.S.A. § 214(b)(4) [ ] does not limit the scope of the amended homestead exemption because [the exemption] is a remedial statute...." This argument conflates a common-law rule and a legislative enactment. The general rule that only procedural or remedial legislative changes affect pending cases is a hoary principle rooted in English common law. *See Murray v. Mattison,* 63 Vt. 479, 480, 21 A. 532 (1891). The rule of construction contained in 1 V.S.A. § 214(b) is a legislative enactment which modifies the old common law principle. *Myott's* holding demonstrates how the Vermont Supreme Court views the interplay between the two distinct principles.

> The application of an amendment to an existing case is governed by 1 V.S.A. § 214(b)(2), (4). Under this section, the remedial change will apply to the case in progress *unless* it affects a pre-existing "right, privilege, obligation or liability."

*Myott, supra,* 149 Vt. at 576, 547 A.2d 1336 (emphasis added). Thus, the common law rule applies except to the extent it is modified by the statute. More specifically, a "remedial change will apply ... *unless* it affects a pre-existing right, privilege, obligation or liability.'" *Id.*

■ Debtors argue that Vermont's Supreme Court "has plainly held that if '[t]here are no pre-existing *vested* rights involved,' then 1 V.S.A. § 214(b) does not apply." Debtors' Reply, 4, *quoting Myott, supra,* 149 Vt. at 576, 547 A.2d 1336 (emphasis supplied by Debtors). We disagree. The common-law rule that procedural or remedial legislation will ordinarily be enforced retrospectively, is subject to an exception in cases involving pre-existing vested rights. *Curran v. Marcille,* 152 Vt. 247, 250, 565 A.2d 1362 (1989). The statute, however, contains no requirement that the "rights" be vested. The phrase Debtors quote from *Myott* came in a passage that was killing two birds with one stone. The Court had just set out both the common-law principle and the statutory rule, and in the quoted phrase was eliminating both as obstacles to the retrospective application of an amended statute.

Two later Vermont Supreme Court cases help clarify its position with respect to the issue of vesting. In *Curran, supra,* 152 Vt. at 250, 565 A.2d 1362, a personal injury plaintiff appealed a summary judgment for the state on the grounds of sovereign immunity. The plaintiff asked the Court to give retrospective effect to a statutory amendment that permitted suits against the sovereign where insurance was available. The Court acknowledged the common-law rule that "remedial or curative statutes are given curative effect to the extent they do not impair vested rights," but refused to enforce it, because of the statutory bar of 1 V.S.A. § 214(b). *Curran, supra,* 152 Vt. at 250, 565 A.2d 1362. "This Court has repeatedly stated that absent the most clear and unequivocal language, a statute affecting legally existing rights should not be construed to operate retrospectively." *Id.* This suggests that the Court does not in fact require that the rights be vested. Justice Morse, concurring in *Lillicrap v. Martin,* 156 Vt. 165, 181, 591 A.2d 41 (1991), states explicitly that "[t]he nature of that right—vested or inchoate—is not relevant". This reading is supported by the statutory language, which extends to "any right," not just to vested ones. Accordingly, we hold that, under 1 V.S.A. § 214(b), the Vermont homestead exemption is not available with respect to pre-existing debt.

■ That holding, however, is not the end of our task. We must now look at the federal law of Bankruptcy, which dictates a different result. When Debtors filed, a bankruptcy estate was created that consisted of "all legal or equitable interests" they held in any property at the time of filing. 11 U.S.C. § 541. Their homestead was a part of their bankruptcy estate. "Notwithstanding sec-

tion 541," Debtors may exempt certain property from the estate. 11 U.S.C. § 522(b). Vermont Debtors are permitted to exempt from property of the estate "any property that is exempt under ... State or local law that is applicable on the date of the filing of the petition...." 11 U.S.C. § 522(b)(2)(A). The increased homestead exemption was clearly applicable on the date Debtors filed. Even under state law, the increased exemption would have been available as against any debts incurred in the few days between the effective date of the statute and Debtors' filing. The exemption was thus available and validly claimed.

This Court and the debtors and creditors who come before it will have to live with the ruling we make today for a long time, at least until no debts pre-existing the homestead amendment are outstanding. The difficult question is whether § 522(b)(2)(A) requires the particular debtor actually be entitled to the exemption, or whether the section refers to a list of exemptions generally available. If we read into the section the requirement that the particular debtor actually be entitled to the exemption, then, for many years to come, we will be plagued with "the 'painful undertaking necessary to obtain detailed information on revolving charge accounts,' the 'tremendous cost,' and the impossible task of knowing what debt is incurred prior to ... and what debt is incurred after'" the effective date of the homestead amendment. *In re Whalen–Griffin,* 206 B.R. 277, 280 (Bkrtcy.D.Mass.1997) (citation omitted).

We believe that § 522(b)(2)(A) does not require that a debtor actually be entitled to a particular exemption. Rather, the section merely defines what types of property can be exempted from property of the estate. The effect of exempting property from the bankruptcy estate is defined by 11 U.S.C. § 522(c), which provides that "property exempted under this section is not liable during or after the case for *any* debt of the debtor that arose ... before the commencement of the case...." (Emphasis added.)

We have held that state law limits the increased homestead exemption to debts incurred after its effective date. Our construction of § 522(c) gives debtors in bankruptcy

more benefit from the exemption than they would obtain in state court proceedings. This construction is in harmony with the Supreme Court's holding in *Owen v. Owen,* 500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350. In *Owen,* the debtor's former spouse recorded a judgment in a county where debtor owned no property. Debtor subsequently purchased a condominium there, and, under Florida law, the previously-recorded lien attached to the after-acquired property. *Id.,* 500 U.S. at 306–07, 111 S.Ct. at 1834–35. A year after the condominium was purchased and the lien attached, Florida amended its homestead statute so that debtor's condominium qualified for the exemption. *Id.,* 500 U.S. at 307, 111 S.Ct. at 1835. The question before the Court was whether 11 U.S.C. § 522(f), which "provides that judicial liens encumbering exempt property can be eliminated," applies even "when the State has defined the exempt property in such a way as specifically to exclude property encumbered by judicial liens." *Id.,* 500 U.S. at 306, 111 S.Ct. at 1834.

The Court characterized pre-existing liens as "in effect an exception to the Florida homestead exemption." *Id.,* 500 U.S. at 307, 111 S.Ct. at 1835. Our construction of Vermont law also makes pre-existing debts an exception to the Vermont homestead exemption. The Court held that § 522(f)

establishes as the baseline, against which impairment is to be measured, not an exemption to which the debtor "is entitled," but one to which he "would have been entitled." The latter phrase denotes a state of affairs that is conceived or hypothetical, rather than actual, and requires the reader to disregard some element of reality. "Would have been" but for what?

*Id.,* 500 U.S. at 311, 111 S.Ct. at 1837. The answer, the Court said, is "but for" the very lien which was an exception to the Florida homestead exemption. *Id.* The Court thus gave an exemption created and defined by state law an expanded operation in Bankruptcy.

The ex-spouse in Owen asserted that such a reading was "inconsistent with the Bankruptcy Code's 'opt-out' policy, whereby the States may define their own exemptions, to

refuse to take those exemptions with all their built-in limitations."[4]  The Court responded,

> That is plainly not true, however, since there is no doubt that a state exemption which purports to be available "unless waived" will be given full effect, even if it has been waived, for purposes of § 522(f)—the first phrase of which, as we have noted, recites that it applies "[n]otwithstanding *any waiver of exemptions*." Just as it is not inconsistent with the policy of permitting state-defined exemptions to have another policy disfavoring waiver of exemptions, whether federal- or state-created; so also it is not inconsistent to have a policy disfavoring the impingement of certain types of liens upon exemptions, whether federal- or state-created.  We have no basis for pronouncing the opt-out policy absolute, but must apply it along with whatever other competing or limiting policies the statute contains.

*Id.*, 500 U.S. at 313, 111 S.Ct. at 1838 (citations omitted).

Similarly, § 522(c) contains a policy that limits and competes with the "opt-out" policy of § 522(b).  That policy, as characterized by *Owen* is that "[p]roperty that is properly exempted under § 522 is ... *immunized* against liability for prebankruptcy debts." *Id.*, 500 U.S. at 308, 111 S.Ct. at 1836 (emphasis added).  Accordingly, we deny Trustee's objection to Debtors' $75,000 homestead exemption.

Counsel for Debtors shall settle an order consistent with this Memorandum of Decision on five days' notice to Plaintiffs counsel.

---

**4.**  The "opt-out" policy referred to is contained in 11 U.S.C. § 522(b)(2)(A), which permits states to limit their citizens to state-created exemptions, rather than allowing them to choose the federal exemptions contained in 11 U.S.C. § 522(d).