The TRAVELERS INSURANCE COMPANY, Plaintiff–Appellant,

v.

Susan J. CARPENTER, Defendant–Appellee.

**Docket No. 01–9474.**

United States Court of Appeals, Second Circuit.

Argued: Oct. 2, 2002.

Decided: Dec. 13, 2002.

Andrew W. Goodger, Kiel Ellis & Boxer, Springfield, VT (Andrew C. Boxer, on the brief), for the appellant.

Steven P. Robinson, Diamond & Robinson, P.C., Montpelier, VT, for the appellee.

Before: MINER, SOTOMAYOR, and KATZMANN, Circuit Judges.

SOTOMAYOR, Circuit Judge.

Plaintiff-appellant Travelers Insurance Company ("Travelers"), a Connecticut corporation, appeals from a judgment of the United States District Court for the District of Vermont (Murtha, C.J.) denying Travelers' motion for summary judgment against defendant-appellee Susan J. Carpenter, a Vermont citizen, and dismissing without prejudice Travelers' declaratory judgment complaint on abstention grounds in deference to parallel, pending state-court litigation.

Carpenter was in a car crash in February 1999 and suffered an injury for which she received workers' compensation benefits from Travelers. In April 2000, after Carpenter received a $150,000 settlement under the Underinsured Motorist provision of her personal automobile liability policy ("UIM provision"), Travelers filed this action in the District Court of Vermont under Vt. Stat. Ann. tit. 21, § 624(e) (2001), seeking to have the workers' compensation benefits it had paid reimbursed from the UIM settlement funds paid to Carpenter, and to have future payments offset against the remainder. At issue is whether the July 1, 1999 amendment to § 624(e) or the pre-amendment text provides the controlling law for Travelers' reimbursement right, and, if the post-amendment text controls, how its prohibition on an employee receiving "double recovery" affects the rights of the parties to the UIM settlement proceeds. Because these issues present questions of law for which no controlling precedent or plain-meaning statutory analysis provides adequate answers, we certify the following questions to the Supreme Court of Vermont:

1. Under the circumstances of this case, in which a worker was injured in February 1999 and settled under her privately purchased liability insurance policy in April 2000, was the § 624(e) reimbursement right of a workers' compensation carrier "acquired [or] accrued" under § 214(b)(2) before or after the July 1, 1999 amendment to § 624(e)?

2. If the § 624(e) reimbursement right accrued before July 1, 1999, is the amendment to § 624(e) a "clarifying" amendment that should be applied retroactively?

3. If the post-amendment text controls, under the circumstances of this case in which an injured worker received both workers' compensation benefits and a recovery under the UIM provision of a privately purchased insurance policy, how is the prohibition on "double recovery" in § 624(e) defined and, if relevant, when and how are an injured worker's "total" damages determined?

## BACKGROUND

### I. Facts

On February 26, 1999, Susan Carpenter sustained injuries in a single car accident; Kimberly Webb, a co-worker, was driving the car at the time of the accident, and the accident was within the scope of Carpenter's employment for Bell Atlantic Yellow Pages ("Bell Atlantic"). As Bell Atlantic's workers' compensation carrier, Travelers received, accepted, and paid Carpenter's claim for workers' compensation benefits, including temporary total disability and medical expenses.

In addition to a claim against her co-worker's liability carrier that resulted in a $25,000 settlement payment, Carpenter made a claim under the UIM provision in her personal automobile liability policy (coincidentally also purchased from Travelers) and received a $150,000 settlement on or about April 13, 2000. Carpenter also brought a tort action in state court against Webb, to which Travelers is now the real party-in-interest. This state court action is still pending and, according to the district court, "will result in a determination of the total damages the defendant has suffered as a result of the accident."[1]

## II. The July 1999 Amendment to § 624(e)

In Vt. Stat. Ann. tit. 21, § 624(e) (2001), Vermont law provides a workers' compensation insurer with a right to reimbursement of workers' compensation benefits paid to an injured worker if the worker subsequently receives certain types of recoveries that also compensate for the injury. The question here is what those rights are when the subsequent recovery flows from a UIM provision in an insurance policy privately purchased by the injured worker and when the Vermont legislature amended the relevant text of § 624(e) on July 1, 1999, over four months after the date of Carpenter's injury but over nine months before Carpenter received the proceeds of her UIM settlement.

1. Carpenter sued Webb in state court for negligent driving. Carpenter alleges that this state court lawsuit revealed for the first time that Bell Atlantic held a commercial auto insurance policy, also issued by Travelers, with $2,000,000 of coverage for the occupants of the vehicle. (It is because of Webb's coverage under this commercial auto policy that Travelers is now the real party-in-interest to Carpenter's state court lawsuit.) Presumably, if the parties do not settle, if no affirmative defense prevents the merits from being reached, and if Webb is found to be negligent, this tort suit will provide at least one definition of Carpenter's "total" damages in order to fix Webb's and Travelers' liability for Webb's negligence.

Prior to its amendment, § 624(e) provided that:

In an action to enforce the liability of a third party, the injured employee may recover any amount which the employee or the employee's personal representative would be entitled to recover in a civil action. *Any recovery against the third party* for damages resulting from personal injuries or death only, after deducting expenses of recovery, *shall first reimburse the employer or its workers' compensation insurance carrier* for any amounts paid or payable ... to date of recovery, and the balance shall forthwith be paid to the employee ... and shall be treated as an advance payment by the employer on account of any future payments of compensation benefits.

Section 624(e) (emphasis added). Interpreting this pre-amendment text, the Vermont Supreme Court held in *Travelers Cos. v. Liberty Mutual Insurance Co.*, 164 Vt. 368, 372–73, 670 A.2d 827, 829 (1995), that proceeds from a UIM provision recovery, even when the injured employee paid for the policy, were to be considered a recovery from a "third party" for the purposes of § 624(e). *Travelers Cos.*, 164 Vt. at 374, 670 A.2d at 830 ("UIM coverage is unlike other privately purchased insurance, and allowing a workers' compensation insurer to treat a[ ] UIM award as a recovery from the tortfeasor is a rational

way to achieve the Legislature's policy goals.").

The July 1999 amendment to § 624(e) appended the following sentence:

Reimbursement required under this subsection, except to prevent double recovery, shall not reduce the employee's recovery of any benefit or payment provided by a plan or policy that was privately purchased by the injured employee, including uninsured-under insured motorist coverage, or any other first party insurance payments or benefits.

Section 624(e). While this amendment addresses a workers' compensation carrier's right to reimbursement from an injured employee's recovery under a privately purchased policy, no Vermont court to date has addressed the effect of the amendment or the meaning of its prohibition on "double recovery."

### III. Proceedings in the District Court

On December 15, 2000, Travelers brought this action asking the court to declare that Travelers was entitled to the value of Carpenter's UIM settlement, less costs of recovery under § 624(e). To effectuate this declaration, Travelers requested the court to direct Carpenter to reimburse Travelers for workers' compensation benefits paid prior to Carpenter's UIM settlement[2] and to permit Travelers to withhold future benefit payments in an amount appropriate to internalize the remaining value of the settlement.[3]

---

**2.** As of April 28, 2000, Carpenter had received approximately $36,948.57 in benefits. The record neither explains the time lag between the April 13 settlement and the April 28 estimate of benefits paid nor indicates whether Carpenter received any payments after April 28, 2000.

**3.** At the same time, Travelers also moved for relief directing Carpenter to pay Travelers the $25,000 received from Webb's insurer, minus appropriate costs. This claim likely would

not be affected by the July 1999 amendment to § 624(e), as it represents a recovery that was not "provided by a plan or policy that was privately purchased by the injured employee," § 624(e), and thus Travelers' right to reimbursement from this portion of Carpenter's recovery is independent of the issues discussed here.

The status of this claim is unclear. Before Travelers filed this suit, Carpenter had sent a check to Travelers for two-thirds of $25,000,

In its unpublished Ruling On Cross Motions For Summary Judgment dated October 17, 2001, the district court addressed the issue of which version of § 624(e) applied: it presumed the applicable law to be fixed on the February 1999 date of the accident, yet found the statute as amended on July 1999 to provide the controlling law as of February 1999. Relying on *Montgomery v. Brinver Corp.*, 142 Vt. 461, 465, 457 A.2d 644, 646 (1983), for the proposition that a Vermont court should credit "the latest expression of legislative will" whenever existing law is in conflict, the district court read two Vermont Supreme Court cases—*St. Paul Fire & Marine Insurance Co. v. Surdam*, 156 Vt. 585, 595 A.2d 264 (1991) and *Brunet v. Liberty Mutual Insurance Group*, 165 Vt. 315, 682 A.2d 487 (1996)—to make "seemingly conflicting pronouncements" on the pre-amendment meaning of § 624(e) and thus to require retroactive application of the § 624(e) amendment as "a clarification, rather than a change, in existing law." Because the district court found that "whether the 1999 amendment actually constitutes a 'new' law is unclear," the fact that the accident occurred before the amendment became effective was immaterial; the amendment was the Vermont legislature's pronouncement of what the law had been prior to the amendment.

Having decided that the text of § 624(e) as amended controlled Travelers' claims, the district court proceeded to interpret the text of the July 1999 amendment. It found that "the effect of [the amendment] language was to make clear that an insurer, such as Travelers, has a right to recover workers' compensation benefits paid to an employee only to the extent that those benefits constitute a 'double recovery'"; noted that "double recovery" could only be determined "in light of [Carpenter's] total award of damages"; and thus interpreted the amendment not to grant Travelers any right to reimbursement until after Carpenter had effectively been made whole and had received compensation for her "total" damages. This interpretation of § 624(e) required deferring any calculation of Travelers' reimbursement until after Carpenter's total compensation from other sources became clear: "the issue of whether Ms. Carpenter has received a double recovery must await a determination of the amount and type of benefits she is awarded in her [pending state court] suit against Ms. Webb."

Finally, in a separate Ruling and Order dated November 20, 2002, the district court dismissed without prejudice Travelers' claim as "duplicative of the matter presently pending in [the state court action against Webb] and as failing to raise any further issues which require adjudication." The court cited *Youell v. Exxon Corp.*, 74 F.3d 373 (2d Cir.1996), for authority to dismiss before Travelers' rights had been fully determined. *See id.* at 375–376 (applying the *Brillhart* abstention doctrine under which a federal court entertaining a declaratory judgment action may, within its discretion, decline to exercise jurisdiction when the questions in controversy are more suitably addressed in a currently pending state court proceeding between

minus half of expenses, and Travelers returned this check accompanied by the cryptic statement: "As you know, we are disputing the fact that we believe we are entitled to the full reimbursement of our lien by means of the underinsured motorist insurance." The district court did not address Travelers' claim on the recovery from Webb's insurer (although it does mention that Carpenter made this recovery), nor does Travelers mention in its briefs on appeal the district court's failure to address the issue. Whether these funds have been paid to Travelers, the claim is not before us on this appeal.

the same parties). Final judgment was entered on November 27, 2001.

Travelers appealed to this Court.

## DISCUSSION

■ We review a district court's denial of summary judgment *de novo,* a review we will only undertake when a final decision or other distinct district court action has rendered the case appealable. *See Terwilliger v. Terwilliger,* 206 F.3d 240, 244 (2d Cir.2000); *Schaefer v. State Ins. Fund,* 207 F.3d 139, 142 (2d Cir.2000) (per curiam). Here, the questions we certify to the Vermont Supreme Court are directly implicated in the district court's denial of Travelers' Motion for Summary Judgment, so for the limited purpose of the questions we certify, our review of the district court is *de novo.*[4] Additionally, the questions we certify present pure issues of statutory

construction and are thus questions we review *de novo. Gussack Realty Co. v. Xerox Corp.,* 224 F.3d 85, 91 (2d Cir.2002).

This certification presents several questions, each of which requires interpretation of Vermont statutory law. The first two questions both address a "temporal choice of law" issue concerning whether the pre- or post-post-amendment version of § 624(e) controls Travelers' right to reimbursement. First, what event marks the date on which controlling law is fixed in a workers' compensation insurer's claim for a § 624(e) right to reimbursement? Second, presuming the event fixing the controlling law occurred before enactment of the § 624(e) amendment—for example, presuming as the district court did that the accident fixes the controlling law—was the July 1999 amendment a clarifying amendment that under Vermont law would apply to all claims yet to be adjudicated?[5]

**4.** In contrast, we review a district court's decision to dismiss a federal declaratory judgment action in deference to a parallel, pending state-court action for abuse of the discretion outlined in *Brillhart v. Excess Insurance Co.,* 316 U.S. 491, 494–96, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942) (discussing non-comprehensive factors). *See Wilton v. Seven Falls Co.,* 515 U.S. 277, 286, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995); *accord Youell,* 74 F.3d at 375–76. As with all issues not resolved by the Vermont Supreme Court, we expressly reserve for future decision, if necessary, any review of whether the action before the district court was truly an action for declaratory judgment and whether the district court's dismissal was proper. We do note, however, that Travelers has not directly argued on appeal that, if the district court's statutory interpretations are valid, the district court improperly exercised its discretion in dismissing the case.

**5.** The question what conduct to which a non-retroactive statute applies is distinct from the question whether the statute is intended to be retroactive. *See Landgraf v. USI Film Prods.,* 511 U.S. 244, 269–70, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) ("A statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct ante-

dating the statute's enactment or upsets expectations based in prior law. Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment." (internal footnote and citation omitted)); *Carpenter,* 143 Vt. at 333, 465 A.2d at 1382 ("[I]t has been held specifically that a statute is not retrospective because it merely relates to prior facts or transactions but does not change their legal effect.... It is said to be retroactive only when it is applied to rights acquired prior to its enactment." (quoting *Barbieri v. Morris,* 315 S.W.2d 711, 714 (Mo.1958) (internal quotation marks and citations omitted))). Furthermore, both of these questions are independent from the much narrower question whether the retroactive application of a statute is constitutionally permissible, *see Landgraf,* 511 U.S. at 266–68, 114 S.Ct. 1483, a question that is not troublesome on the facts presented here. "The Constitution's restrictions [on retroactive applications of laws], of course, are of limited scope.... [T]he potential unfairness of retroactive civil legislation is not a sufficient reason for a court to fail to give a statute its intended scope." *Id.* at 277, 114 S.Ct. 1483.

If, in response to the above questions, the pre-amendment text of § 624(e) were to control Travelers' claim, our inquiry would return to terrain that the Vermont Supreme Court has already clearly mapped in *Travelers Cos.*, terrain that we may competently navigate without further assistance. If the post-amendment version of § 624(e) were to provide the applicable rule, however, our journey would venture back into uncharted territory and would confront a second question on which we also seek guidance: Under the amended version of § 624(e), what is the "double recovery" that is prohibited to an injured worker?

## I. When a § 624(e) right to reimbursement accrues

■ Travelers argues that the Vermont Supreme Court held that a § 624(e) right to reimbursement accrues on the date of the accident when it stated in *Montgomery* that "[t]he right to compensation for an injury under the Workmen's Compensation Act is governed by the law in force at the time of occurrence of such injury." 142 Vt. at 463, 457 A.2d at 645. As the date of Carpenter's accident preceded the enactment of the amendment to § 624(e), Travelers proposes that the pre-amendment text, clearly interpreted by *Travelers Cos.* to give a workers' compensation carrier a right to reimbursement from recoveries on UIM provisions in privately purchased policies, 164 Vt. at 372–73, 670 A.2d at 829, controls.

*Montgomery*, however, addressed only accrual of the injured employee's rights to benefits from the workers' compensation carrier; in the instant case, in contrast,

Travelers seeks to vindicate its distinct § 624(e) right to reimbursement of compensation already provided. The Vermont courts have not addressed whether the law controlling an insurer's right to reimbursement is fixed on the same date as the law governing an injured worker's right to compensation.[6] The law controlling each claim need not be fixed on the same date, as each claim vindicates a different right and the events giving rise to each right may occur at different times. *See State v. Willis*, 145 Vt. 459, 466–67, 494 A.2d 108, 112 (1985) ("The applicable law is that which is in effect at the time of the occurrence of the facts which give rise to the *rights* in question."); *Carpenter v. Vt. Dep't of Motor Vehicles*, 143 Vt. 329, 333, 465 A.2d 1379, 1382 (1983) ("[T]he essential inquiry is whether 'the act which triggers application of the amended statute occurs after the effective date of the amended statute.'" (quoting *Nix v. Tice*, 44 Colo.App. 42, 607 P.2d 399, 400 (1980))).

Following this line of reasoning, Carpenter argues that the date of her recovery or receipt of the UIM settlement proceeds fixes the applicable law vis-a-vis Travelers' right to reimbursement. While the injured employee's right to compensation accrues the moment the injury occurs, the carrier's right to reimbursement arguably does not exist until the employee receives a recovery separate from her workers' compensation benefits for her injury. Indeed, the reimbursement may never occur at all: in the event that the injured employee were not to receive any recovery apart from workers' compensation, Travelers would have no right to be reimbursed.

---

**6.** The other Vermont cases to which Travelers cites in support of the *Montgomery* rule similarly address the scope of benefits to be received through the initial claim by the injured employee against the insurance carrier. *Fleury v. Kessel/Duff Constr.*, 156 Vt. 406, 592 A.2d 904 (1991) (attorneys' fees incurred by injured worker pressing his claim for benefits); *Longe v. Boise Cascade Corp.*, 171 Vt. 214, 762 A.2d 1248 (2000) (fees incurred for physician examination required to evaluate worker's injury).

Presented with a similar question regarding when a workers' compensation carrier's subrogation right to an injured worker's third-party recovery accrues, other jurisdictions arrive at contradictory conclusions from which a clear pattern is difficult to discern.[7]

If Carpenter is correct and *Montgomery* does not control, whether the pre- or post-amendment text governs Travelers' claim is a question that requires an answer more specific than when Travelers acquired a generic right: we must determine the point in time at which Travelers acquired the type of right that an amendment to § 624(e) could not override. A Vermont statute appears to control this question: "The amendment . . . of an act or statutory provision . . . shall not . . . [a]ffect any right, privilege, obligation or liability acquired, accrued or incurred prior to the effective date of the amendment. . . ." Vt. Stat. Ann. tit. 1, § 214(b)(2) (2001). We can find no clear answer, however, to what type of "right" or "privilege" must be "acquired or accrued" for protection under § 214(b)(2); the extent to which a right must solidify or vest is subject to conflicting interpretations in Vermont caselaw.

In *Myott v. Myott,* 149 Vt. 573, 547 A.2d 1336 (1988), the Supreme Court of Vermont noted the absence of "pre-existing vested rights" in a § 214(b)(2) analysis. 149 Vt. at 576, 547 A.2d at 1338 (finding that an amendment to the statute governing child custody that was passed after the divorce action was filed but before the custody hearing was held provided the ap-

---

**7.** *Compare Anderson v. National Carriers, Inc.,* 240 Kan. 101, 727 P.2d 899, 902 (1986) ("[T]here is no right to subrogation unless and until the injured workman has obtained a judgment against the third-party tortfeasor."), *St. Joseph Healthcare Sys. v. Travelers Cos.,* 119 N.M. 603, 893 P.2d 1007, 1009 (App. 1995) (noting that the employer's subrogation "claim is governed by the statute in effect at the time its claims accrued, rather than the statute in effect at the time of [w]orker's injuries" and finding "the relevant statute" to be the statute as amended after the date of the injury but before the date of the settlement between the worker and the tortfeasor's insurers), *and Getek v. Ohio Cas. Ins. Co.,* 868 F.Supp. 751, 757 n. 6 (E.D.Pa.1994) (applying Pennsylvania law) (implying without holding that a workers' compensation carrier's subrogation claim would vest on the date an injured worker negotiated a settlement with a non-employer tortfeasor), *with Tillman v. Cam's Trucking, Inc.,* 20 S.W.3d 579 (Mo.Ct. App.2000) ("[T]he 'subrogation' rights of [the employer] and its workers' compensation insurer in regard to [the worker's] recovery against [the tortfeasor] in this case are to be determined under the version of [the statute] in force on the date of [the worker's] injury."), *Liberty Mut. Ins. Co. v. Garffie,* 939 S.W.2d 484, 487 (Mo.Ct.App.1997) (finding that if the date of injury did not fix governing law, "[t]he subsequent change in the [subro-

gation] statute . . . [would have] impaired the employer's vested rights under existing law"), *Combined Ins. v. Shurter,* 258 Neb. 958, 607 N.W.2d 492, 498 (2000) (finding a non-employer tortfeasor "was potentially liable to [the worker] on the date of the accident . . . and [the workers' compensation insurer's] subrogation interest became vested on . . . the date of [the worker's] injury" for statute of limitations purposes), *and Knapp v. Consol. Rail Corp.,* 171 Misc.2d 597, 655 N.Y.S.2d 732, 734 (Sup.Ct.1997) (determining that a defendant/third-party plaintiff's right to contribution vests prior to the defendant being found liable to an injured plaintiff because "while the *quantum* of contribution may be inchoate, the right to seek contribution itself is vested").

At least one other jurisdictions vest a workers' compensation carrier's right to subrogation, and thus fix the governing law, on a date somewhere in between the date of injury and the date of recovery. *See, e.g., Spengler v. Employers Commercial Union Ins. Co.,* 131 Ga.App. 443, 206 S.E.2d 693, 696–97 (1974) (holding that a workers' compensation carrier's claim of subrogation vests when the carrier provides the statutorily required notice of its subrogation claim and finding repeal of the statute granting the subrogation right preserved only subrogation claims where notice had been provided prior to repeal).

propriate standard in the case because "[t]here are no pre-existing vested rights involved here"). A District of Vermont Bankruptcy Court, however, has interpreted *Myott* to support a reading of § 214(b) under which even contingent rights could not be displaced by subsequent amendments. *In re Skjetne*, 213 B.R. 274, 277–78 (Bankr.D.Vt.1997) (finding an amendment increasing the homestead exemption of a debtor in bankruptcy did not apply to creditors' claims that predated the amendment, despite debtor's bankruptcy filing postdating the amendment).[8] Furthermore, as one post-*Myott* Supreme Court of Vermont concurrence has noted, because the face of § 214(b) refers to "any right" rather than any more limited set of vested rights, "[t]he nature of that right—vested or inchoate—is not relevant. By the express terms of § 214(b)(2), that right cannot be affected-and certainly not eliminated—by a later [amendment]." *Lillicrap v. Martin*, 156 Vt. 165, 181, 591 A.2d 41, 50 (1989) (Morse, J., concurring) (arguing that, under § 214(b)(2), a statute of repose does not affect the right to bring an action for an injury suffered before the date of its enactment).

Likewise, *Harris v. Town of Townshend*, 56 Vt. 716, 1883 WL 6989 (1883), held a statute with language similar to § 214(b)—providing, according to the court, "that the repeal of an act shall not affect a right accruing, accrued, acquired, or established, before the time when the repeal takes effect"—protected more than just vested rights. *Id.* at 719. In fact, in determining that an injured party had a right to sue the town when a statute per-

mitting the suit had been in effect at the time of the injury but had been repealed by the time the suit was filed, the *Harris* court did "not find it necessary ... to decide whether the plaintiff had any ... vested right" in order to apply the statute because more than just vested rights were protected from statutory repeal:

> His right of action had accrued. His right to recover was dependent upon the proof to be made.... [But, h]is right was not an inchoate one in the sense in which the word is used in some of the cases, where it has been held that an inchoate right was lost by the repeal of a statute. His right was as perfect as any can be, where the question of its enforcement is open to contention and litigation.

*Id.* at 719–20; *see also Curran v. Marcille*, 152 Vt. 247, 250, 565 A.2d 1362, 1364 (1989) (mentioning vested rights in the context of New York common law on retroactive application of statutes but omitting any such reference in a discussion of § 214(b)(2)).

We thus find several dimensions of uncertainty in Vermont law with respect to whether Travelers' § 624(e) right accrued before or after the July 1999 amendment: whether *Montgomery* controls, what type of "right" must be "accrued" for protection from a statutory amendment under § 214(b)(2) if *Montgomery* does not control, and whether Travelers' acquired this right to its § 624(e) claim before or after July 1, 1999.

## II. Retrospective application of the July 1999 amendment to § 624(e)

 The resolution of when Travelers' § 624(e) reimbursement right accrued,

---

**8.** After noting that *Myott* applied both a common law retroactivity analysis and a § 214(b) analysis, and that the common law rule permitted retroactive application except when such application confronted pre-existing vested rights, the *Skjetne* court concluded *Myott's* reference to vested rights "came in a passage that was killing two birds with one stone. The Court had just set out both the common-law principle and the statutory rule, and in the quoted phrase was eliminating both as obstacles to the retrospective application of an amended statute." *Skjetne*, 213 B.R. at 277.

however, may not be dispositive of the "temporal choice of law" issue: even if the date of the accident determines the applicable law, the amendment to § 624(e) may have been retroactive legislation and may still be controlling law.

The district court labeled the July 1999 amendment to § 624(e) a "clarifying" amendment and applied it retroactively. It relied on *Montgomery*, 142 Vt. at 465, 457 A.2d at 646, for the proposition that when a statutory amendment is enacted in the face of conflicting caselaw, the amendment should be interpreted to clarify the conflict and should therefore be given retroactive effect. In *Montgomery*, the Supreme Court of Vermont addressed the rights of an injured worker to workers' compensation benefits when two statutory provisions, both validly enacted on the date the injury occurred, were in "direct conflict," one "mandat[ing] disability payments without regard to time or monetary limits" and another "seem[ing] to require such limitations." *Id.* Invoking the canon of statutory construction that "[w]hen there are two statutes upon the same subject matter in irreconcilable conflict, the statute that is the most recent legislative enactment controls, since it is the latest expression of legislative will," *Montgomery*, 142 Vt. at 463–64, 457 A.2d at 646, the court applied the provision most recently enacted.

In some tension with this interpretation of *Montgomery* is the view that the Vermont Supreme Court "has repeatedly stated that absent the most clear and unequivocal language, a statute affecting legally existing rights should not be construed to operate retrospectively," *Curran*, 152 Vt. at 250, 565 A.2d at 1364, and thereby supercede § 214(b).

Carpenter cites caselaw from neighboring jurisdictions to support the construal of the July 1999 amendment as a clarifying amendment meriting retroactive application. *See, e.g., Toise v. Rowe*, 243 Conn. 623, 707 A.2d 25, 27 (1998) ("Statutes passed to resolve a controversy engendered by statutory ambiguity often are deemed to have a clarifying effect."); *In re Robinson's Claim*, 11 A.D.2d 374, 207 N.Y.S.2d 297, 298–99 (App. Div.3d Dep't 1960) ("[R]emedial statutes which are 'designed to correct imperfections in the prior law ... [and] are to be liberally construed so as to spread their beneficial results as widely as possible ... constitute an exception to the general rule that statutes are not to be given a retroactive operation.'") (quoting N.Y. Stat. Law § 54 (McKinney 1960)) (alteration in original).

We find no Vermont caselaw addressing whether a similar common law exception exists in Vermont and survives the passage of § 214, and we consider the issue of whether the July 1999 to § 624(e) applies retroactively to be unsettled under Vermont law.

### III. The meaning of "double recovery" in the July 1999 amendment to § 624(e)

 Presuming, as the district court did, that the July 1, 1999 post-amendment text of § 624(e) governs Travelers' claim for reimbursement, we must determine Travelers' rights under the amended statute. To date, no Vermont court has issued an opinion interpreting the amendment, so we turn to the plain meaning of the text. *See Weissenstein v. Burlington Bd. of Sch. Comm'rs*, 149 Vt. 288, 292, 543 A.2d 691, 693 (1988) (citing *Lomberg v. Crowley*, 138 Vt. 420, 423, 415 A.2d 1324, 1326 (1980)). Carpenter's UIM settlement is plainly the very type of recovery to which the amendment was addressed: the amendment explicitly brings within its scope recoveries under policies "privately purchased by the injured employee, including uninsured-un-

der insured motorist coverage." Section 624(e). While the amendment also clearly by default exempts Carpenter's recovery from the general reimbursement regime detailed in the pre-amendment portion of § 624(e), *see id.* ("[r]eimbursement required under [§ 624(e) ] ... shall not reduce the employee's recovery" to the types of policies addressed in the amendment), this default exemption is subject to a much disputed proviso: "except to prevent double recovery," *id.* Thus, to the extent necessary, to "prevent double recovery," Travelers still possesses a right to be reimbursed from Carpenter's UIM settlement for benefits paid under § 624(e) as amended. We find the meaning of this double-recovery proviso, however, to be ambiguous and respectfully request guidance from the Vermont Supreme Court in our task of establishing the rights of the parties to the settlement funds.

Each party suggests an interpretation, but each interpretation presents difficulties. Carpenter asserts the prohibition on double recovery "prevents a windfall or recovery that would exceed a person's total losses." Under this formulation, the "double" in double recovery refers solely to the quantity of compensation for all losses without any reference to source. Carpenter relies on Black's Law Dictionary to define double recovery as a "[r]ecovery which represents more than the total maximum loss which all parties have sustained." Black's Law Dictionary 490 (6th ed.1991); *see also Brunet v. Am. Ins. Co.,* 660 F.Supp. 843, 849 (D.Vt.1987) ("It is axiomatic that plaintiff may not receive double recovery for his injuries. If plaintiff were to collect both worker's compensation and [UIM benefits] without compar-

ing their total to plaintiff's total damages, plaintiff might receive compensation for the same injury twice."). Carpenter urges us to affirm the district court insofar as it held that Carpenter's "total" damages and total recoveries were both necessary variables in any formula used to compute double recovery; that is, that double recovery occurs only when the sum of all recoveries exceeds total damages.

In contrast, Travelers construes the prohibition on double recovery to mean that "[a]n injured employee is not entitled to recover workers' compensation benefits and personal injury damages from a third-party for the same injury or expenses." Under this formulation, double recovery occurs whenever an injured worker receives two recoveries from different sources for the same injury, regardless of the amount of either recovery; double refers solely to a doubling of the source of the recoveries rather than their amounts. Travelers points to the Vermont Supreme Court's own use of the term in *St. Paul Fire & Marine Insurance* for support: summarizing the effect of § 624(e), the court stated that "[w]hen a third party is found responsible in a personal injury action for damages suffered by the worker, the worker is not permitted double recovery from both the insurer and third party for the same injury." 156 Vt. at 590, 595 A.2d at 266. In essence, Travelers urges that we label all recoveries addressed by the amendment double recoveries, at least up to the value of the workers' compensation benefits conferred, and that we grant "first-dollar" reimbursement from the UIM recovery to the workers' compensation insurer to head off the "double recovery" prohibited an injured worker.[9]

9. Travelers notes that not all workers' recoveries will lead to double recovery on the part of the worker because, under *St. Paul Fire & Marine Insurance,* 156 Vt. at 590, 595 A.2d at

266, and *Brunet,* 165 Vt. at 317–18, 682 A.2d at 488, purely noneconomic recoveries do not "double" the compensation for economic in-

Query whether Travelers' argument risks rendering the July 1999 amendment to § 624(e) meaningless? Indeed, Travelers concedes in its brief that the recoveries addressed by the amendment are treated the same under the pre-amendment caselaw, *see, e.g., Brunet,* 165 Vt. at 317–18, 682 A.2d at 488, as under the post-amendment statute.[10] The amendment, however, was arguably enacted for the very purpose of overruling the Vermont Supreme Court's holding in *Travelers Cos.* and removing UIM provisions from the scope of the *Brunet* holding.

Even if Carpenter's interpretation of the prohibition on double recovery is correct and Travelers only has a right to funds from Carpenter's UIM recovery once Carpenter has been compensated for her "total" damages, however, this concept of "total" damages remains highly elusive. The statute gives no guidance on what types of damages to include in the "total" figure. Furthermore, disputes arising from accidents often result in settlements and involve multiple parties; a determination of "total" damages might never be made but for the § 624(e) proceedings, and such a determination, if made in a separate proceeding, might not bind a workers' compensation insurer.[11]

In summary, we request clarification of what type of double recovery is prohibited

by § 624(e). Although execution of Traveler's theory is self-evident, execution of Carpenter's theory is not. If relevant, we therefore also seek guidance on how, when, and by whom "total" damages are to be computed.

## IV. Certification

While the application of Vermont law necessarily permeates any opinion deciding Travelers' claims, the requirement of applying state law does not alone distinguish this case from the many cases federal courts routinely hear and decide under diversity jurisdiction, without recourse to certification. We elect respectfully to extend an invitation to the Vermont Supreme Court to address this dispute because it directly implicates multiple issues of Vermont statutory law that lack sufficient Vermont precedent for us to make an informed determination with certainty.

"Certification is a discretionary device, both for the certifying court and for the court requested to answer the certified question[s]." *McCarthy v. Olin Corp.,* 119 F.3d 148, 153 (2d Cir.1997) (quoting *Riordan v. Nationwide Mut. Fire Ins. Co.,* 977 F.2d 47, 51 (2d Cir.1992)) (internal quotation marks omitted). Local Rule § 0.27 permits certification "to the highest court of a state an unsettled and significant

jury provided by workers' compensation benefits.

10. "[T]he *Brunet* case makes clear that regardless of whether a claimant has been fully compensated for both economic and non-economic damages by the third-party recovery, that recovery is fully available to satisfy the lien of the workers' compensation carrier, thereby preventing a 'double recovery' of economic damages. The amendment to § 624(e) does not change this result." "The Vermont legislature, by including the phrase 'except to prevent double recovery' in the amendment, continued to permit workers' compensation carriers to recoup benefits paid under the Act

against UM/UIM recoveries so long as the reimbursement prevented a 'double recovery' on the part of the claimant. The amendment does not alter or supersede the holding in *Brunet. ...*"

11. In the case before this Court, the truly unique posture of the litigants that led to dismissal in deference to the state court proceedings must be highlighted: Travelers is a party to the state court proceedings only because it coincidentally provided coverage for both Carpenter under Bell Atlantic's workers compensation insurance plan and for Webb under Bell Atlantic's commercial automobile policy.

question of state law that will control the outcome of a case pending before this Court." 2d Cir. R. § 0.27. Reciprocally, the Vermont Supreme Court may entertain a certified question "if the answer may be determinative of an issue in pending litigation in the certifying court and there are no clear controlling precedents." Vt. R.App. P. 14(a) (2002).

As the preceding analysis demonstrates, all of the questions that we certify pose purely state-law questions, they determine the outcome in this case (provided each needs to be reached), and they lack controlling Vermont precedent. Because of these factors, we find that certification is appropriate.

## CONCLUSION

As discussed above, we hesitate to decide important issues of Vermont law, controlling in the case before us, on which no clear guidance from the Vermont courts or the Vermont legislature exists. Accordingly, we respectfully certify the following questions to the Supreme Court of Vermont:

1. Under the circumstances of this case, in which a worker was injured in February 1999 and settled under her privately purchased liability insurance policy in April 2000, was the § 624(e) reimbursement right of a workers' compensation carrier "acquired [or] accrued" under § 214(b)(2) before or after the July 1, 1999 amendment to § 624(e)?

2. If the § 624(e) reimbursement right accrued before July 1, 1999, is the amendment to § 624(e) a "clarifying" amendment that should be applied retroactively?

3. If the post-amendment text controls, under the circumstances of this case in which an injured worker received both workers' compensation benefits and a recovery under the UIM provision of a privately purchased insurance policy, how is the prohibition on "double recovery" in § 624(e) defined and, if relevant, when and how are an injured worker's "total" damages determined?

We acknowledge, of course, that the Vermont Supreme Court may reformulate these questions. *See* Vt. R.App. P. 14(b). We invite the Vermont Court to do so and to take up any additional questions of Vermont law in this case that it chooses to answer.

It is hereby ordered that the Clerk of this Court transmit to the Clerk of the Supreme Court of Vermont a Certificate, as set forth below, together with a complete set of the briefs, appendix, and record filed in this Court by the parties. The parties are directed to bear equally such fees and costs as may be directed by the Supreme Court of Vermont, including any entry fee required under Vt. R.App. Proc. 3(b)(1).

Because the questions we certify to the Supreme Court of Vermont are controlling, we expressly do not reach the issue whether the district court properly exercised its decision to dismiss without prejudice the case as duplicative of pending state litigation. The panel retains jurisdiction to address this issue, if necessary, and any additional issues that may need to be reached after the Supreme Court of Vermont has offered its guidance or declined certification.

## CERTIFICATE

As ordered by the United States Court of Appeals for the Second Circuit, the foregoing is hereby certified to the Supreme Court of Vermont, pursuant to Vt. R.App. Proc. 14 and 2d Cir. R. § 0.27.