## Daniel J. EMBREE v. James BALFANZ

[817 A.2d 6]

No. 02-099

October 24, 2002. Appellant James Balfanz, defendant in the case below, appeals from a Windsor Family Court order granting appellee Daniel J. Embree's request for relief from abuse. Balfanz argues on appeal that he and Embree are neither "family members" nor "household members" within the ambit of 15 V.S.A. §§ 1101-1160, and that Embree is therefore precluded from obtaining such relief. We agree, and reverse the order.

In 1987, Embree married Heidi (Wilcox) Embree. Approximately one year later, Balfanz married Heidi's sister, Shelly (Wilcox) Balfanz. At the time that this case was brought, Embree and his wife were involved in a contentious divorce, and two related incidents led to this litigation. The family court found each incident to constitute "abuse" of Embree by Balfanz. Neither finding of abuse is challenged on appeal by Balfanz.

The first incident occurred near Embree's Vermont residence, on November 6, 2001. In a first vehicle, Embree's wife, assisted by Balfanz's wife and daughter, had just finished moving her belongings out of the house. Balfanz was in a second vehicle, and was waiting for the first vehicle, in a church parking lot at the bottom of the hill toward the main road.

At that time, Embree, in a third vehicle, proceeded up the hill toward his residence. Viewing Embree's car with concern, Balfanz followed his vehicle. The family court found that Balfanz's "reckless operation" of his vehicle, in following Embree more closely than was reasonable or prudent, constituted "abuse."

A second incident occurred five days later, on November 11, 2001. Balfanz and Embree were both at a cottage in Tupper Lake, New York. As Embree left the cottage, Balfanz placed a rolled rug at the base of the door to prevent cold air from entering. Embree opened the door to come back in, and struck Balfanz with the door. An altercation commenced, whereby Balfanz punched Embree in the face, causing a cut and bleeding to Embree's lips.

On November 26, 2001, Embree filed for a temporary relief from abuse order against Balfanz, stating that the relationship between Balfanz and Embree was that of a "brother in law." That same day, the court granted Embree's request, and issued an ex parte temporary order, effective until the hearing date on December 7, 2001. Balfanz filed a motion to dismiss the temporary order, claiming that the parties were not "family or household members" as requisite for the issuance of such order. The court held a hearing on Balfanz's motion, and by written opinion dated December 18, 2001, the court denied Balfanz's motion. Although the court found that the parties were not "family members" within the meaning of the statute, it found that the parties were "household members." Upon also finding sufficient facts to constitute "abuse," the court continued the temporary order. In response to Balfanz's motion to reconsider or to hold a hearing on the merits, the court held a hearing on January 29, 2002, and concluded at that time that the parties were both "family members" and "household members." Again finding that Embree had established abuse, the court

issued a permanent order, to expire January 29, 2003.

According to Vermont's Abuse Prevention Statute, "[a]ny family or household member may seek relief from abuse by another family or household member on behalf of him or herself or his or her children by filing a complaint under this chapter." 15 V.S.A. § 1103(a). As such, a court must make two distinct findings. First, the plaintiff and defendant must be "family or household members." Second, "abuse" between the parties must have occurred.

Here, Balfanz attacks the court's findings regarding the first of these elements, asserting that Embree and Balfanz are neither "family members" nor "household members." As the findings in this case rest upon conclusions of law, our review of these conclusions is nondeferential and plenary. *N.A.S. Holdings, Inc. v. Pafundi*, 169 Vt. 437, 438-39, 736 A.2d 780, 783 (1999). However, where the lower court has correctly applied the law, we will affirm those conclusions which are reasonably supported by the findings. See *Schnabel v. Nordic Toyota, Inc.*, 168 Vt. 354, 357, 721 A.2d 114, 118 (1998).

## I.

The family court determined that Embree and Balfanz fell within the ambit of "family members" as the phrase is commonly understood and as was intended by the Legislature. We disagree. Balfanz and Embree are not "family members" under Vermont's Abuse Prevention Statute. Notably, the term "family" is not itself defined by the statute. See 15 V.S.A. § 1101. Where the Legislature has not defined a statutory term, we must be guided by the plain and commonly accepted meaning of the phrase, see *Donley v. Donley*, 165 Vt. 619, 620, 686 A.2d 943, 945 (1996) (mem.), and, where pertinent, legislative history as to the purpose the statute is intended to accomplish. *Perry v. Med. Practice Bd.*,169 Vt. 399, 406, 737 A.2d 900, 905 (1999).

"Family" is defined as "[a] group consisting of parents and their children" or "[a] group of persons connected by blood, by affinity, or by law." Black's Law Dictionary 620 (7th ed. 1999). We have previously observed — in concluding that a sister could seek relief from abuse by her brother — that a brother-sister relationship fell within the scope of the term "family member." See *Donley*, 165 Vt. at 620, 686 A.2d at 945. Balfanz and Embree, however, are not related as parents and children nor by blood or affinity.* As such, it cannot be said that they are members of the same family within the commonly accepted meaning of the term.

Our interpretation of "family member" is further informed by the statute's legislative history. *Perry*, 169 Vt. at 406, 737 A.2d at 905. Although the Legislature's most recent amendment to the statute specifically identifies "reciprocal beneficiary" as within the meaning of "family," 15 V.S.A. § 1101(6), the Legislature has repeatedly refused to define "family member" as broadly as the court did below. As originally enacted in 1980, the Legislature defined "family or household members" as simply "spouses or former spouses." 1979, No. 153 (Adj. Sess.), § 1. The Legislature affirmatively rejected a proposal to extend protection to "other persons related by consanguinity or affinity." House Jour. 196 (Feb. 8, 1980, Adj. Sess.). In 1982, the Legislature amended the statute to further include "persons sixty years of age or older living in the same household and related by blood or marriage." 1981, No. 218 (Adj.

---

* The term "affinity" refers to "[t]he relation that one spouse has to the blood relatives of the other spouse." Black's Law Dictionary 59 (7th ed. 1999). Thus, "[a] husband is related by affinity to his wife's brother, but not to the wife of his wife's brother." 2 C. Torcia, Wharton's Criminal Law § 242, at 573 (15th ed. 1994) (footnote omitted).

Sess.), § 1. Here, although covering situations of elder abuse, the Legislature rejected proposed language which would extend this protection to those similarly situated under sixty years of age. Sen. Jour. 381 (Apr. 7, 1982, Adj. Sess.). In 1992, the Legislature excluded "family" from the definition, retaining only "household member." 1991, No. 135 (Adj. Sess.), § 14. Additionally, the Legislature rejected a proposal to include in the definition "persons related by blood, adoption or marriage now or in the past." Sen. Jour. 388 (Mar. 31, 1992, Adj. Sess.). In 1998, the House specifically rejected language that would include "[p]ersons who are related or formerly related by marriage." House Jour. 1624 (Apr. 16, 1998, Adj. Sess.). This history also demonstrates that the family court's application of the term "family members" to the facts of this case was error.

## II.

We further determine that the family court erroneously concluded that Balfanz and Embree are "household members" within the meaning of 15 V.S.A. § 1101(2). " 'Household members' means persons who, for any period of time, are living or have lived together, are sharing or have shared occupancy of a dwelling . . . ." 15 V.S.A. § 1101(2). The family court's recitation of the evidence of Embree's and Balfanz's sharing of the same household concluded only that "[t]he defendant testifies to spending one night under the same roof with the plaintiff, and the plaintiff testifies to as many as 11 nights under the same roof." "A recitation of evidence in findings is not a finding of the facts contained in the testimony related and it cannot be so construed." *Krupp v. Krupp*, 126 Vt. 511, 514, 236 A.2d 653, 655 (1967). Even assuming that we treat this statement as a "finding" that the parties spent eleven nights in the same household during a thirteen year acquaintance, we agree with the family

court's self-characterization of the finding as "weak." It is much too slender a reed to support the application of the Family Abuse Act to the parties in this case, and the family court's attempt to do so was error.

*Reversed.*