**THE TRAVELERS INSURANCE COMPANY, Plaintiff-appellant,**

v.

**Susan J. CARPENTER, Defendant-appellee.**

**Docket No. 01–9474.**

United States Court of Appeals, Second Circuit.

Argued: Oct. 2, 2002.

Decided: June 20, 2005.

**324**

Andrew W. Goodger, Kiel Ellis & Boxer, Springfield, VT (Andrew C. Boxer, on the brief), for plaintiff-appellant.

Steven P. Robinson, Diamond & Robinson, Montpelier, VT, for defendant-appellee.

Before: MINER, SOTOMAYOR and KATZMANN, Circuit Judges.

SOTOMAYOR, Circuit Judge.

This case is before us for the second time, following our certification to the Vermont Supreme Court of three questions regarding Vermont workers' compensation law. *See Travelers Ins. Co. v. Carpenter,* 313 F.3d 97, 109 (2d Cir.2002) (*"Travelers I "*). By order dated August 31, 2004, the Vermont Supreme Court dismissed the certified proceeding, holding that its earlier acceptance was improvidently granted. *Travelers Ins. Co. v. Carpenter,* No. 2002–558, 2004 WL 2332085, slip op. at 1–2 (Vt. Aug. 31, 2004). We proceed, in the absence of guidance from the state court, to answer two of the certified questions of state law and to dispose of the appeal from the judgment of the United States District Court for the District of Vermont (Murtha, C.J.). We hold that a workers' compensation insurer's right to reimbursement under Vt. Stat. Ann. tit. 21, § 624(e) (2003) of proceeds of an uninsured/underinsured motorist policy is governed by the law in effect at the time that the injured worker recovers those proceeds. We further hold that under § 624(e) as amended in 1999,

the insurer has no right to reimbursement unless and until the injured worker has received compensation in excess of the total damages sustained. Finally, we hold that the district court erred in dismissing this action on abstention grounds instead of granting judgment in favor of defendant-appellee Susan J. Carpenter for the limited declaratory relief she requested.

## BACKGROUND

The facts underlying this case are fully set forth in our order of certification, *see Travelers I,* 313 F.3d at 99–102, and we restate them only briefly here. On February 26, 1999, defendant-appellee Susan J. Carpenter was injured in a single-car accident. Carpenter's coworker Kimberly Webb was driving the car. Because the injury occurred within the scope of Carpenter's employment for Bell Atlantic Yellow Pages ("Bell Atlantic"), plaintiff-appellant Travelers Insurance Company ("Travelers"), the workers' compensation insurance carrier for Bell Atlantic, paid her resulting claim for workers' compensation benefits. Carpenter also sought compensation through at least three other channels. She made a claim against Webb's liability carrier, which was settled for $25,000. She made another claim under the underinsured motorist ("UIM") provision of her own personal automobile liability policy, coincidentally also carried by Travelers, which was settled in April of 2000 for $150,000. Finally, Carpenter sued Webb in state court for negligent driving. Because Travelers also happens to be the issuer of a commercial auto insurance policy to Bell Atlantic that covers the occupants of the vehicle involved in the accident, Travelers is the real party-in-interest to the state negligence suit as well. At the time of our first decision, the negligence lawsuit was still pending.

Travelers brought the instant action in the United States District Court for the District of Vermont in December of 2000 seeking, *inter alia,* a declaration that it was entitled to the value of Carpenter's settlement under her personal UIM policy, less the costs of recovery, as an offset against its workers' compensation benefits liability. Travelers based its claim on section 624 of title 21 of the Vermont Statutes. Under § 624(a), an injured employee may both claim workers' compensation benefits and seek compensation from a party other than the employer who is under some legal liability to pay. Vt. Stat. Ann. tit. 21, § 624(a) (2003). If the injured worker has not commenced an action against a responsible third party within a year of the injury, the employer or its insurance carrier may prosecute the action in the worker's name. *Id.*

Section 624(e) governs the operation of such dual liability where, as here, the worker brings the third party action. At the time of the accident in February of 1999, section 624(e) provided in relevant part:

> In an action to enforce the liability of a third party, the injured employee may recover any amount which the employee . . . would be entitled to recover in a civil action. Any recovery against the third party for damages resulting from personal injuries or death only, after deducting expenses of recovery, shall first reimburse the employer or its workers' compensation insurance carrier for any amounts paid or payable . . . to date of recovery, and the balance shall forthwith be paid to the employee . . . and shall be treated as an advance payment by the employer on account of any future payment of compensation benefits.

Vt. Stat. Ann. tit. 21, § 624(e) (1987 & Supp.1993). In 1995, the Vermont Su-

preme Court interpreted the phrase "third party" in this version of § 624(e) to include carriers of UIM policies. *See Travelers Cos. v. Liberty Mut. Ins. Co.,* 164 Vt. 368, 372–73, 670 A.2d 827, 829–30 (1995). Accordingly, an injured employee who received workers' compensation benefits and who also recovered under his or her own first party UIM policy was obliged, after deducting expenses of recovery, to reimburse the employer or its insurance carrier fully before retaining any of the proceeds.[1] *Id.* In other words, as the law stood on the date of Carpenter's accident, recovery of the proceeds of a UIM first party insurance policy was treated like any recovery from a liable third party under § 624(e).

In May of 1999, the Vermont legislature amended § 624(e) by adding at the end of the text quoted a third sentence, as follows:

> Reimbursement required under this subsection, except to prevent double recovery, shall not reduce the employee's recovery of any benefit or payment provided by a plan or policy that was privately purchased by the injured employee, including uninsured-under insured motorist coverage, or any other first party insurance payments or benefits.

Act of May 12, 1999, No. 41, § 4, 1999 Vt. Acts & Resolves 765, 770 (codified at Vt. Stat. Ann. tit. 21, § 624(e) (2003)). This amendment became effective in July of 1999, *id.,* after Carpenter was injured in the car accident but before she settled her claim under her UIM policy.

The parties cross-moved for summary judgment before the district court, disputing both the applicability and the meaning of the amendment to § 624(e). The district court held that the July 1999 change to § 624(e) was a "clarification" of the law as it stood prior to the change and applied to Carpenter's claim no matter when the law governing that claim was fixed. It agreed with Carpenter's contention that the amended version of § 624(e), in specifying that an insurer has no right to reimbursement from first party proceeds "except to prevent double recovery," did not require Carpenter to reimburse Travelers unless and until she received more compensation than the amount of her "total" damages. The district court concluded that because the amount of Carpenter's total loss was unknown, "the instant record provides no basis for granting the defendant's Cross Motion for Summary Judgment." Instead it ordered the parties to address whether, in light of the pendency of Carpenter's lawsuit against Webb in state court (to which, as noted above, Travelers was coincidentally the real party-in-interest), Travelers' federal action should not be dismissed as seeking a declaration on questions more suitably addressed in a pending state proceeding.[2] The district court subsequently dismissed the federal action on that ground.

Travelers appealed the district court's denial of summary judgment. Travelers argued that the law governing its rights under § 624(e) was fixed at the time of

---

1. Where applicable, section 624(e) provides both for reimbursement of benefits already paid to the injured worker and for a credit to the employer or insurance carrier against future benefits payments. For brevity, in the balance of this opinion we will use the term "reimbursement" to describe both obligations.

2. The district court referred to this Court's decision in *Youell v. Exxon Corp.,* 74 F.3d 373, 375 (2d Cir.1996), which applied the discretionary abstention doctrine applicable to declaratory judgment actions first elaborated in *Brillhart v. Excess Insurance Co.,* 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942), and reconfirmed in *Wilton v. Seven Falls Co.,* 515 U.S. 277, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995).

Carpenter's February 1999 injury, and that under the version of § 624(e) effective prior to July of 1999, it was entitled to first-dollar reimbursement from her UIM recovery and a credit against future workers' compensation benefit payments. Carpenter argued in response that the amended version of § 624(e) controlled, and that the district court was correct that the effect of the amendment was to shield her UIM recovery from reimbursement except to the extent that it represented recovery of more than her total damages from the accident. Finding "no clear guidance from the Vermont courts or the Vermont legislature" on either the temporal choice of law issue or the meaning of "double recovery," we certified the following three questions to the Vermont Supreme Court:

> 1. Under the circumstances of this case, in which a worker was injured in February 1999 and settled under her privately purchased liability insurance policy in April 2000, was the § 624(e) reimbursement right of a workers' compensation carrier "acquired [or] accrued" under [Vt. Stat. Ann. tit. 1] § 214(b)(2) before or after the July 1, 1999 amendment to § 624(e)?
>
> 2. If the § 624(e) reimbursement right accrued before July 1, 1999, is the amendment to § 624(e) a "clarifying" amendment that should be applied retroactively?

> 3. If the post-amendment text controls, under the circumstances of this case in which an injured worker received both workers' compensation benefits and a recovery under the UIM provision of a privately purchased insurance policy, how is the prohibition on "double recovery" in § 624(e) defined and, if relevant, when and how are an injured worker's "total" damages determined?

*Travelers I,* 313 F.3d at 109. We reserved for decision, if necessary, the question of whether the district court was correct to abstain from settling the question of Carpenter's total damages. *Id.* at 102 n. 4, 109.

In an unpublished order dated August 31, 2004, the Vermont Supreme Court dismissed the certified proceeding as improvidently granted. It held that "[u]nless and until the Second Circuit addresses the correctness of the district court's dismissal [on abstention grounds], any opinion from this Court on the certified questions pertaining to § 624(e) would be purely informative because it would not lead to a final and enforceable result" and would not "determine the pending litigation" as required by Vermont Rule of Appellate Procedure 14(a). We must therefore address the parties' contentions on this appeal without the benefit of the Vermont Supreme Court's guidance.[3]

---

3. Withdrawal of an order accepting certified questions, like acceptance of certified questions in the first instance, lies entirely within the discretion of the Vermont Supreme Court. *See* Vt. R.App. P. 14(a) ("The Vermont Supreme Court may answer a question of Vermont law certified to it ... if the answer may be determinative of an issue in pending litigation in the certifying court .... The Court in its discretion may decline to answer any question certified to it and need not state reasons for its action."). We note, however, that we disagree with the Vermont Supreme Court's view that its answers to the three certified questions might have been merely advisory in light of the district court's dismissal on abstention grounds. The district court dismissed the action only because the conclusions it reached on all three certified questions suggested to it that it could proceed no further without determining an issue (the total amount of Carpenter's loss) that the state negligence suit might answer. We cannot evaluate whether the district court was correct to dismiss the action and enter judgment without first determining whether the amount of Carpenter's total loss was legally relevant to the determination of whether there had been a "double recovery." And we cannot evaluate whether the district court

## DISCUSSION

### I. *Jurisdiction and Standard of Review*

■ Travelers invoked the district court's diversity jurisdiction. *See* 28 U.S.C. § 1332. Carpenter argued below that the district court lacked subject-matter jurisdiction because Travelers was required to but did not exhaust administrative remedies under Vt. Stat. Ann. tit. 21, § 606 (2003), which provides that "[q]uestions arising under the provisions of this chapter ... shall be determined, except as otherwise provided, by the commissioner." The district court rejected this argument, holding that Travelers' entitlement to reimbursement from Carpenter's UIM recovery is "collateral" to Carpenter's right to workers' compensation benefits and need not be litigated before the Vermont Commissioner of Industries. Although the parties do not address the issue on this appeal, where jurisdiction is questionable we are obliged to examine the question *sua sponte. World Trade Ctr. Props., L.L.C. v. Hartford Fire Ins. Co.*, 345 F.3d 154, 160 (2d Cir.2003).

■ As the district court acknowledged, the Vermont Supreme Court has invoked § 606 to bar declaratory judgment actions regarding parties' rights under certain provisions of the Workers' Compensation Act under the doctrine of "primary jurisdiction." *See Travelers Indem. Co. v. Wallis*, 176 Vt. 167, 172–75, 845 A.2d 316, 321–23 (2003) (dismissing under § 606 declara-tory judgment regarding Commissioner's implementation of statutory provisions regarding interim payment of benefits); *Demag v. Am. Ins. Cos.*, 146 Vt. 608, 610, 508 A.2d 697, 698 (1986) (same as to action concerning denial of benefits; holding that Vermont's "Declaratory Judgments Act cannot be used to circumvent the statutory remedy provided in the Workers' Compensation Act"). When the same court was faced with a declaratory judgment action regarding an insurer's reimbursement rights under § 624(e) in *Travelers Cos.*, however, it raised no such bar to the exercise of its own jurisdiction to settle the legal question presented. *See Travelers Cos.*, 164 Vt. at 370–371, 670 A.2d at 828. Because the Vermont Supreme Court defers to the Commissioner's interpretation of the statute, *see Morin v. Essex Optical/The Hartford,* —— Vt. ——, 868 A.2d 729, 731 (2005); *Bedini v. Frost,* 165 Vt. 167, 169, 678 A.2d 893, 894 (1996), but treated the statutory interpretation issue in *Travelers Cos.* as one of first impression without any indication that the Commissioner had taken a view on the matter, we can only infer that the question of the insurer's rights vis-à-vis UIM proceeds under § 624(e) in *Travelers Cos.* was not first presented to the Commissioner. Because the Vermont Supreme Court regards the failure to present a question to the Commissioner as a bar to its own subject-matter jurisdiction, *see Demag,* 146 Vt. at 610, 508 A.2d at 698, we must further infer

---

should have been concerned with whether there had been a "double recovery" at all unless we first determine the temporal choice of law issue. No matter what answers the Vermont Supreme Court might have given to the certified questions, they would have served as the *rationes decidendi* of our disposition of the case. (The questions we certified are admittedly interrelated such that certain answers to the first and second questions could render answers to the second or third questions, respectively, unnecessary to decide the case. But this much is apparent in the phrasing of the questions themselves; we did not invite the Vermont Supreme Court to answer each question without regard to the others.) That a further determination not implicating state law might also have been necessary in light of the state court's answers does not, in our view, mean that the certified questions fall short of the requirement that they "may be determinative" of the litigation. Vt. R.App. P. 14(a).

from its exercise of jurisdiction in *Travelers' Cos.* without any mention of § 606 that the court did not view the doctrine of primary jurisdiction as a bar to a declaratory judgment regarding an insurer's rights under § 624(e). We therefore conclude that the district court was correct to do as the Vermont Supreme Court has done in exercising jurisdiction over the declaratory judgment action.[4] We have jurisdiction to review the district court's judgment under 28 U.S.C. § 1291.

■ We review *de novo* the district court's denial of the cross-motions for summary judgment. *Vives v. City of New York*, 393 F.3d 129, 131 (2d Cir.2004). In addressing unsettled areas of state law, we are mindful that "[o]ur role as a federal court sitting in diversity is not to adopt innovative theories that may distort established state law." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Stroh Cos.*, 265 F.3d 97, 106 (2d Cir.2001) (internal quotation marks, citation and alteration omitted). Instead we must "carefully predict how the state's highest court would resolve the uncertaint[ies]" that we have identified. *Santalucia v. Sebright Transp., Inc.*, 232 F.3d 293, 297 (2d Cir.2000) (internal quotation marks, alteration and citations omitted). "In making this prediction, we give the fullest weight to pronouncements of the state's highest court, here the Vermont Supreme Court, while giving proper regard to relevant rulings of the state's lower courts. We may also consider decisions in other jurisdictions on the same or analogous issues." *Maska U.S., Inc. v. Kansa Gen. Ins. Co.*, 198 F.3d 74, 78 (2d Cir.1999) (internal quotation marks and citations omitted).

II. *Law governing Travelers' claim to reimbursement*

■ As discussed more fully in our certification order, *see Travelers I*, 313 F.3d at 104–05, we must analyze the temporal choice of law issue in this case in light of Vt. Stat. Ann. tit. 1, § 214(b) (2003), which provides in relevant part that "[t]he amendment . . . of an act or statutory provision . . . shall not . . . [a]ffect any right, privilege, obligation or liability acquired, accrued or incurred prior to the effective date of the amendment." The question is thus whether Travelers had a right to reimbursement of the UIM proceeds within the meaning of § 214(b) prior to the July 1999 amendment of § 624(e). That

4. We note that during the pendency of this appeal, the Commissioner appears to have concluded that she has primary jurisdiction under § 606 to determine the meaning of the 1999 amendment to § 624(e) in a dispute between an insurer and an insured worker. *See LaBrie v. LBJ's Grocery*, No. 29–02WC, 2002 WL 1776576, at \*4–5, 7–8 (Vt. Dep't of Labor & Indus. July 10, 2002) (so holding and noting with approval that the insurer's declaratory judgment action was dismissed under § 606 by an unpublished order of the Bennington Superior Court (citing *Peerless v. LaBrie*, No. 213–6–01, Bncv, at 4–5 (Bennington Sup.Ct. Oct. 26, 2001))). *LaBrie* may thus suggest that the issue of Travelers' rights under § 624(e) is not properly regarded as "collateral" to issues ordinarily litigated before the Commissioner, at least in the view of the Commissioner and an inferior state court.

The case may be distinguishable in that the Commissioner's jurisdiction was also invoked to settle the issue (not present here) of whether the Commissioner's failure to approve of a settlement agreement dividing a UIM recovery voided that agreement under Vt. Stat. Ann. tit. 21, § 662(a) (2003), which requires the Commissioner's approval of settlements "in regard to compensation payable under the provisions of" the workers' compensation statute. *See LaBrie*, 2002 WL 1776576, at \*2–7. In any event, to the extent the Commissioner's opinion in *LaBrie* calls the district court's decision in the instant case into doubt, as a federal court sitting in diversity we must regard the Vermont Supreme Court's implicit holding in *Travelers Cos.* as controlling. *See Maska U.S., Inc. v. Kansa Gen. Ins. Co.*, 198 F.3d 74, 78 (2d Cir.1999).

question requires that we determine when an insurer's right under § 624(e) to reimbursement from an injured worker's third party recovery accrues or is acquired.

Vermont law is clear that "[t]he right to compensation for an injury under the Workmen's Compensation Act is governed by the law in force at the time of occurrence of such injury." *Montgomery v. Brinver Corp.*, 142 Vt. 461, 463, 457 A.2d 644, 645 (1983). As we noted in our certification order, however, Travelers' right to reimbursement from the proceeds of a third party recovery is distinct from Carpenter's right to workers' compensation benefits in the first instance.[5] *Travelers I*, 313 F.3d at 103. Nor does the fact that Travelers shares in Carpenter's right to compensation from liable third parties mean that Carpenter's injury—indisputably the event triggering *her* right of third party recovery—is the event that gives rise to Travelers' right to reimbursement from that recovery. While § 624(a) gives an insurer a right to proceed directly against a liable third party in the worker's name under specified circumstances when the worker fails to do so, § 624(e) governs the allocation of third party recoveries awarded to the worker. In this sense, the insurer's interest under § 624(e) itself is an interest in compensation from the insured rather than a direct subrogation of the insured's claim. *See* 16 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d § 222:82 (2000) (noting that unlike subrogation, which "places an insurer in the shoes of the insured" such that "the insurer acquires the right to assert ... the rights of the insured," reimbursement is "a direct and *independent* right of payment against the insured" (emphasis added)); *see also* 6 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 116.01[1] (2004) (noting that "some statutes in creating rights for the [workers' compensation] payor [to reimbursement] preserve the employee's right to sue the third party, which is not strictly speaking subrogation").[6] Because § 624(e) creates a right to reimbursement from a worker that is distinct under the statute from the insurer's qualified right to stand in for the worker and directly assert his or her right

---

**5.** As we also noted in our certification order, Vermont cases cited by Travelers in support of its view that its own rights are fixed as of the date of the injury similarly concern only the worker's statutory or regulatory entitlement to certain benefits in the first instance. *See Travelers I*, 313 F.3d at 103 n. 6 (distinguishing *Fleury v. Kessel/Duff Constr.*, 156 Vt. 406, 592 A.2d 904 (1991) and *Longe v. Boise Cascade Corp.*, 171 Vt. 214, 762 A.2d 1248 (2000), on this ground).

**6.** In resorting to these two treatises to elucidate basic concepts of the law of insurance and workers' compensation, we follow the frequent practice of the Vermont Supreme Court. *See, e.g., Crosby v. City of Burlington*, 176 Vt. 239, 246 n. 2, 844 A.2d 722, 726 n. 2 (2003) (describing Larsen as "the preeminent workers' compensation authority"); *Edson v. State*, 175 Vt. 330, 334, 830 A.2d 671, 674 (2003) (citing Larson); *Dodge v. Precision Constr. Prods., Inc.*, 175 Vt. 101, 108, 820 A.2d 207, 213 (2003) (same); *Wentworth v. Crawford & Co.*, 174 Vt. 118, 125, 807 A.2d 351, 356 (2002) (same); *Welch v. Home Two, Inc.*, 172 Vt. 632, 634, 783 A.2d 419, 421 (2000) (mem.) (same); *Dunham v. Chase*, 165 Vt. 543, 544, 674 A.2d 1279, 1281 (1996) (mem.) (same); *Mercier v. Holmes*, 119 Vt. 368, 374, 125 A.2d 790, 794 (1956) (same); *see also Fireman's Fund Ins. Co. v. CNA Ins. Co.*, 177 Vt. 215, 862 A.2d 251, 257 (2004) (citing Couch); *Merit Behavioral Care Corp. v. State Indep. Panel of Mental Health Providers*, 176 Vt. 221, 228, 845 A.2d 359, 365 (2004) (same); *Colwell v. Allstate Ins. Co.*, 175 Vt. 61, 75, 819 A.2d 727, 738 (2003) (same); *Nationwide Mut. Fire Ins. Co. v. Gamelin*, 173 Vt. 45, 51–52, 54, 786 A.2d 1078, 1083–84, 1085 (2001) (same, discussing nature of subrogation right); *Vt. Indus. Dev. Auth. v. Setze*, 157 Vt. 427, 434–35, 600 A.2d 302, 307 (1991) (same); *Norfolk & Dedham Fire Ins. Co. v. Aetna Cas. & Sur. Co.*, 132 Vt. 341, 344, 318 A.2d 659, 661 (1974) (same).

to compensation for the injury under § 624(a), the facts giving rise to the reimbursement right are not necessarily the same.

We now adopt the suggestion we advanced tentatively in our certification order, and hold that the law governing a claim to reimbursement under § 624(e) is fixed at the time that the worker recovers from a third party within the meaning of § 624(e). *See Travelers I*, 313 F.3d at 103. We proceed from the general principle that "[t]he applicable law is that which is in effect at the time of the occurrence of the facts which give rise to the *rights* in question." *State v. Willis*, 145 Vt. 459, 467, 494 A.2d 108, 112 (1985). We noted in our certification order, and it remains the case, that no Vermont court has addressed the precise question of what event gives rise to an insurer's right to reimbursement.[7] The commonsensical view is that because the right to be reimbursed cannot plausibly be said to exist in the absence of a recovery from a third party, it arises only when there has been such a recovery. The Vermont Supreme Court's characterizations of § 624(e), though they cast little light on the question, are at least consistent with this view. In *Travelers Cos.*, which established the existence of the right to reimbursement of UIM proceeds to which Travelers claims entitlement, the court explained that § 624(e) "establishes

the right of a worker's compensation carrier to be reimbursed for payments to an insured employee *who obtains* personal damages for injury from a third party." 164 Vt. at 372, 670 A.2d at 829 (emphasis added). The court did not say that the statute establishes an inchoate but vested right of reimbursement from any injured worker; instead it characterized the right belonging to the insurer as existing only with respect to workers who actually obtain other damages. And in *St. Paul Fire & Marine Insurance Co. v. Surdam*, 156 Vt. 585, 590, 595 A.2d 264, 266 (1991), the court explained that "[w]hen a third party is found responsible in a personal injury action for damages suffered by the worker .... the law evens out the consequences by permitting the carrier to recoup the benefits it paid the worker." *Id.* (emphasis added).

We noted in our certification order that some jurisdictions have adopted this view, while others have found that the insurer's right is determined by the law in effect at the time of the injury. *See Travelers I*, 313 F.3d at 104 & n. 7 (comparing cases). Bearing in mind that these cases are only persuasive to the extent the governing statute and decisional principles resemble those of Vermont, we find instructive the New Hampshire Supreme Court's analysis in *Carter v. Liberty Mutual Fire Insur-*

---

7. Although neither party has brought the case to our attention, we note that in *Hansen v. Goldsmith*, No. 35–00WC, 2000 WL 1790106 (Vt. Dep't of Labor & Indus. Oct. 25, 2000), a decision rendered after the amendment to § 624(e), the Commissioner of Industries recited the pre-amendment text of § 624(e), noting that this was the law as it stood "[a]t the time of the injury at issue" in that case. *Id.* at *6. In that case, both the injury and the worker's third party recovery occurred long before the July 1999 amendment, and the dispute did not concern first party insurance benefits, making the amendment irrelevant to the question before the Commissioner. *See*

*id.* at *2–5. Thus, while this decision might be viewed as reflecting an assumption that the governing law under § 624 is fixed at the time of injury, nothing in dispute between the parties required consideration of the question that confronts us. Although the Commissioner's reasonable and just construction of the statute is entitled to deference, *see Morin*, —— Vt. at ——, 868 A.2d at 731, we find this unexamined and apparently casual dictum far too weak a platform on which to base our decision. *Cf. id.* at 734 (rejecting the Commissioner's statutory interpretation where it rested in part on dicta in earlier agency decisions).

*ance Co.,* 135 N.H. 406, 605 A.2d 221 (1992). A 1985 amendment to the New Hampshire statute there in issue expressly "permit[ted] the attachment of a lien to 'the amount of damages or benefits recovered'" under a UIM policy, *id.* at 409, 605 A.2d at 222 (quoting N.H.Rev.Stat. Ann. § 281:14 (then codified at N.H.Rev.Stat. Ann. § 281–A:13 (Supp.1991))), while the law before that amendment did not, *id.* at 408, 605 A.2d at 222. The New Hampshire Supreme Court held that the amendment was applicable to an insurer's claim on UIM proceeds recovered in 1989 and rejected the injured worker's argument that the governing law should be fixed as of the date of his 1983 injury. *Id.* at 408–09, 605 A.2d at 222. Quoting an earlier decision on the nature of an insurer's lien on third party recovery under the statute, the court reasoned that

> [t]he lien does not attach to a mere right of action against a third party, or even to a third-party judgment. It is a lien on the amount of damages recovered in the third-party action.... Because the lien has no vitality unless and until damages are actually recovered, the statute in effect on the date of the recovery of those damages should govern the lien's validity.

*Id.* at 408, 605 A.2d at 222 (quoting *Lakin v. Daniel Marr & Son Co.,* 126 N.H. 730, 733, 495 A.2d 1299, 1302 (1985) (internal quotation marks and citation omitted)). Vermont's statute, unlike New Hampshire's, does not expressly provide that the insurer is entitled to a lien on third party recovery, but the Vermont Supreme Court appears to have recognized that it has this effect. *See Travelers Cos.,* 164 Vt. at 371, 670 A.2d at 829 (noting without criticism lower court's characterization of insurer's interest under § 624(e) as a lien on the third party recovery); *see also LaBrie,* 2002 WL 1776576, at *3 (citing *Travelers Cos.* for the proposition that § 624(e) cre-

ates a statutory lien); *Hansen,* 2000 WL 1790106, at *6 (noting that § 624(e) gives the employer or its insurer a statutory lien); Mark H. Kolter, *And the Lion Shall Lay Down with the Lamb: Third–Party Actions Under Vermont Workers' Compensation Law,* 28 Vt. B.J. 30, 34 (2002) (describing the insurer's interest under § 624 as a lien on the third party recovery). Like the New Hampshire statute considered by the *Carter* court, which gave an insurer a claim on the "'amount of damages ... recovered,'" *Carter,* 135 N.H. at 409, 605 A.2d at 222 (quoting § 281:14), § 624(e) gives the insurer an interest in "[a]ny recovery," not in the claim itself. *Accord Anderson v. Nat'l Carriers, Inc.,* 240 Kan. 101, 104, 727 P.2d 899, 902 (1986) (holding that an insurer's right to reimbursement under a statute granting a lien "'[i]n the event of recovery'" arose only where the injured worker obtained a judgment against a third party (alteration in original) (citation omitted)).

A number of the cases that instead fix the law governing the insurer's rights as of the date of injury rest on the ground that the insurer was entitled to subrogation of the worker's claim against the third party, without giving meaning to the distinct concept of reimbursement from the proceeds of a successful claim. *See, e.g., Combined Ins. v. Shurter,* 258 Neb. 958, 964, 607 N.W.2d 492, 497 (2000) (holding, in case involving reimbursement under statute providing for direct subrogation as well as reimbursement, that insurer's "subrogation interest ... became vested as soon as the injury occurred" and defining "subrogation" as "substitution" of the insurer for the insured (alteration in original) (internal quotation marks and citations omitted)); *Liberty Mut. Ins. Co. v. Garffie,* 939 S.W.2d 484, 487 (Mo.Ct.App.1997) (holding, with respect to a statute providing for reimbursement to an employer when the

employee recovered from a third party, that the employer had a vested right to "full subrogation" as of the date of the injury); *see also Tillman v. Cam's Trucking, Inc.,* 20 S.W.3d 579, 581 n. 6, 585 (Mo.Ct.App.2000) (noting that statute did not grant true subrogation right but following *Garffie* rule). As noted above, we find that the insurer's right to reimbursement and its right to direct subrogation are distinct under § 624, and therefore find that these cases offer less persuasive guidance as to the nature of the reimbursement right under Vermont law.

Because we conclude that Travelers' right to reimbursement accrues only when there has been a third party recovery, and because Carpenter did not receive the UIM proceeds until after July of 1999, we hold that the amended version of § 624(e), applied prospectively, controls Travelers rights to the UIM settlement. In light of this conclusion, we do not need to answer the second question we certified to the Vermont Supreme Court, namely, whether the July 1999 amendment to § 624(e) was a "clarifying" one that may be applied retroactively under Vermont law notwithstanding the general statutory prohibition on retroactive application of statutes affecting legal rights accruing prior to enactment. *See Travelers I,* 313 F.3d at 109.

III. *Double recovery*

■ We proceed to analyze Travelers' rights under the amended version of § 624(e), which provides that an insurer's right to reimbursement under § 624 shall not operate to reduce the employee's receipt of UIM policy proceeds "except to prevent double recovery." In order to determine whether Travelers is entitled to reimbursement, therefore, we must determine the meaning of "double recovery," a term the statute does not define. Travelers argues that "double recovery" means

recovery from more than one source for the same injury—that is, duplicative recovery in any amount. Carpenter argues that the district court correctly understood "double recovery" as used in § 624(e) to mean recovery of more than the total damages the worker sustained as a result of the injury—that is, recovery in excess of the amount required to make the worker whole.

■ When Vermont courts interpret a statute, their "principal objective is to implement legislative intent." *In re Hinsdale Farm,* 177 Vt. 115, 117, 858 A.2d 249, 251 (2004) (citing *State v. Read,* 165 Vt. 141, 147, 680 A.2d 944, 948 (1996)). "Where legislative intent can be ascertained on its face, the statute must be enforced according to its terms without resort to statutory construction." *Id.* (citing *Derosia v. Book Press, Inc.,* 148 Vt. 217, 222, 531 A.2d 905, 908 (1987)). Where statutory construction is necessary, however, Vermont courts "review the history and the entire framework of the statute," *Sec'y, Agency of Natural Res. v. Upper Valley Reg'l Landfill Corp.,* 167 Vt. 228, 241, 705 A.2d 1001, 1009 (1997), as well as "its subject matter, effects and consequences, [and] the reason for and spirit of the law," *Hinsdale Farm,* 177 Vt. at 117, 858 A.2d at 251. " '[T]he legislative history and circumstances surrounding [a statute's] enactment, and the legislative policy it was designed to implement,' can also be helpful in discerning legislative intent." *Id.* (alterations in original) (quoting *Perry v. Med. Practice Bd.,* 169 Vt. 399, 406, 737 A.2d 900, 905 (1999)). "[B]ecause the Workers' Compensation Act is remedial in nature, we construe it liberally to allow benefits, 'unless the law is clear to the contrary.' " *Morin v. Essex Optical/The Hartford,* —— Vt. ——, 868 A.2d 729, 732 (2005) (quoting *St. Paul Fire & Marine Ins. Co.,* 156 Vt. at 590, 595 A.2d at 266).

To determine the ordinary meaning of an undefined statutory term, we turn first, as Vermont's highest court often has, to Black's Law Dictionary.[8] Unfortunately, Black's gives definitions that relate to both of the definitions of "double recovery" offered by the parties: the first definition is "[a] judgment that erroneously awards damages twice for the same loss, based on two different theories of recovery"; the second is "[r]ecovery by a party of more than the maximum recoverable loss that the party has sustained." Black's Law Dictionary 1302 (8th ed.2004).[9] The leading authority in the workers' compensation field notes the same ambiguity in the term "double recovery" when used in the context of reimbursement to a workers' compensation insurer of first party UIM proceeds. *See* 6 Larson's Workers' Compensation Law § 110.05[8], at 110–23 (2004) ("[Double recovery] can mean recovering from two sources a combined amount that is greater than the plaintiff's actual total damages. Or, it can mean getting recoveries from two sources, whether or not the aggregate amount equals or exceeds actual damages.").

In light of this ambiguity, we must resort to statutory construction and examine the "effects and consequences" of each possible meaning in light of the "reason for and spirit of the law." *Hinsdale Farm,* 177 Vt. at 117, 858 A.2d at 251. If we understand "double recovery" to mean recovery of more than the total damages sustained, the effect of the July 1999 amendment is readily apparent: The new third sentence of § 624(e) creates an exception to the workers' compensation insurance carrier's general statutory right to first-dollar reimbursement of third party recoveries under the preceding sentence. Where such recoveries are the result of "first party insurance payments or benefits" under policies purchased by an injured worker, an insurer will only have a right to reimbursement to the extent those benefits, in tandem with the workers' compensation benefits paid or payable, overcompensate the worker. Vt. Stat. Ann. tit. 21, § 624(e). The injured worker then reaps the benefit of both the no-fault workers' compensation coverage and so much of the privately purchased insurance as is necessary to make the worker whole. *See* Kolter, *supra,* at 33 ("The plain language of Section 624(e) provides that if there is no double recovery, the employee is entitled to keep *all* of the proceeds from insurance policies he or she purchased, without reimbursement to the employer or carrier."). This understanding of "double recovery" is consistent with the way the

**8.** *See, e.g., Our Lady of Ephesus House of Prayer, Inc. v. Town of Jamaica,* —— Vt. ——, 869 A.2d 145, 150 (2005); *In re Torres,* —— Vt. ——, 861 A.2d 1055, 1059 (2004); *Embree v. Balfanz,* 174 Vt. 560, 561 & n. *, 817 A.2d 6, 8 & n. * (2002) (mem.); *In re Shantee Point, Inc.,* 174 Vt. 248, 258, 811 A.2d 1243, 1252 (2002); *Wentworth,* 174 Vt. at 125, 807 A.2d at 356 (interpreting workers' compensation statute); *In re S.P., Juvenile,* 173 Vt. 480, 482, 788 A.2d 10, 12 (2001) (mem.); *State v. Brennan,* 172 Vt. 277, 281, 775 A.2d 919, 923 (2001); *In re Dunnett,* 172 Vt. 196, 199, 776 A.2d 406, 409 (2001); *In re Sealed Documents,* 172 Vt. 152, 157, 772 A.2d 518, 524 (2001); *Chittenden Solid Waste Dist. v. Hinesburg Sand & Gravel Co., Inc.,* 169 Vt. 153, 158, 730 A.2d 614, 618 (1999); *Parker v. Town of Milton,* 169 Vt. 74, 82, 726 A.2d 477, 483 (1998); *State v. Fuller,* 168 Vt. 396, 402, 721 A.2d 475, 480 (1998); *Upper Valley Reg'l Landfill Corp.,* 167 Vt. at 239, 705 A.2d at 1008; *Okemo Mountain, Inc. v. Town of Ludlow Zoning Bd. of Adjustment,* 164 Vt. 447, 454, 671 A.2d 1263, 1269 (1995).

**9.** *Accord* Black's Law Dictionary 1280 (7th ed.1999) (same). *But see* Black's Law Dictionary 491 (6th ed.1990) (defining "double recovery" only as "[r]ecovery which represents more than the total maximum loss which all parties have sustained.").

term is sometimes employed in the context of direct recovery under first party UIM insurance. *See* 12 Couch on Insurance 3d § 169:12, at 169–28 (employing the term "double recovery" in the context of stacking UIM coverages to mean "recover[y][of] more than [the injured person's] actual loss"). It is also consistent with Larson's treatise, which, although it notes the ambiguity in the term "double recovery," maintains that an insurer's right to reimbursement of UIM proceeds should be subject to a limitation on "double recovery" only in the sense of recovery of more than the total damages sustained. *See* 6 Larson's Workers' Compensation Law § 110.05[8].

In contrast, it is extremely difficult to reconcile the meaning of "double recovery" that Travelers proposes with the structure and wording of § 624(e). On Travelers' reading, the amendment to § 624(e) has no effect at all on the operation of the subsection. The phrase "except to prevent double recovery," which begins the new third sentence and appears on its face to be an exception to a new general rule that UIM and other first party proceeds "shall not" be paid over to the insurer, would instead completely swallow that general rule: payment under a UIM or other first party policy would always be subject to reimbursement and thus reduce the employee's recovery of worker compensation benefits on a first dollar basis, just as any other third party recovery will. Travelers' proposed reading would render the entire third sentence of § 624(e), if not a nullity, at best a strangely worded restatement of the rule already set forth in the subsec-

tion's second sentence. Word choice aside, it is difficult to conceive why the legislature would have amended the statute in 1999 to reiterate that first party insurance proceeds were to be treated the same as any other third party recovery when that was already the governing interpretation of § 624(e) under the Vermont Supreme Court's 1995 decision in *Travelers Cos. See* 164 Vt. at 373, 670 A.2d at 829. *See generally Conn v. Town of Brattleboro,* 120 Vt. 315, 322, 140 A.2d 6, 10 (1958) ("It is a general rule of statutory construction that some purpose must be assigned to an amendatory act, the contrary not appearing.").

Travelers argues in support of its alternate definition that the Vermont Supreme Court used the term "double recovery" as a synonym for duplicative recovery when discussing the operation of § 624(e) prior to its amendment. *See St. Paul Fire & Marine Ins.,* 156 Vt. at 590, 595 A.2d at 266 ("When a third party is found responsible in a personal injury action for damages suffered by the worker, the worker is not permitted double recovery from both the insurer and third party for the same injury. Rather, the law evens out the consequences by permitting the carrier to recoup the benefits it paid the worker."). We are not persuaded. The Vermont Supreme Court's use of the term "double recovery" in discussing the pre-July 1999 version of § 624(e) does not settle the meaning of the term as used by the legislature in the amendment, because the pre-July 1999 version of § 624(e) did not contain that term.[10]

---

**10.** Travelers also notes that other courts have used the term in the same way when discussing the rights of insurers to subrogation of or reimbursement from third party recoveries. *See, e.g., Frazier v. N.J. Mfrs. Ins. Co.,* 142 N.J. 590, 596–97, 667 A.2d 670, 673 (1995); *Carter,* 135 N.H. at 409, 605 A.2d at 222. But even if we were to accept Travelers's asser-

tion that this is the more broadly accepted meaning of "double recovery," the fact that Travelers' suggested reading of "double recovery" renders the 1999 amendment apparently pointless counsels strongly against accepting its reading of § 624(e). *See Our Lady of Ephesus,* —— Vt. at ——, 869 A.2d at 149 (" '[W]e will not enforce the common and

The available legislative history of the amendment, to which Vermont courts may refer "where pertinent" to the construction of an undefined term, *see Embree v. Balfanz*, 174 Vt. 560, 561, 817 A.2d 6, 8 (2002) (mem.); *see also Human Rights Comm'n v. Benevolent & Protective Order of Elks*, 176 Vt. 125, 129–30, 839 A.2d 576, 581 (2003), strongly suggests that the legislature's purpose in amending § 624(e) was to alter rather than to reiterate the general rule regarding reimbursement. The language which ultimately became the third sentence of § 624(e) was proposed to the Senate Committee on Economic Development, Housing and General Affairs at a May 7, 1999 hearing as an amendment to a House bill making unrelated remedial changes to the workers' compensation statute.[11] The proponent of the amendment was the AFL–CIO, which represented it as legislation intended to reverse the Vermont Supreme Court's decision in *Travelers Cos*. At the same hearing, the lawyer who represented the injured worker in *Travelers Cos*. testified that the amendment was intended to allow an injured worker to be made whole from his or her own UIM insurance instead of using the proceeds of that insurance to reimburse the workers' compensation insurance carrier. A representative of the American Insurance Association argued in opposition to the amendment that insurers should remain entitled to first-dollar reimbursement, making explicit reference to the *Travelers Cos*. court's logic. While "remarks of ... witness[es] at a committee hearing are accorded little weight in determining the intent of the legislature in enacting a statute," *State v. Madison*, 163 Vt. 360, 373, 658 A.2d 536, 545 (1995), the discussion of legislators in response to those remarks is weightier evidence, *see In*

ordinary meaning of statutory language if doing so would render the statute ineffective or lead to irrational results.' " (quoting *Town of Killington v. State*, 172 Vt. 182, 188–89, 776 A.2d 395, 401 (2001))); *In re MacIntyre Fuels, Inc.*, 175 Vt. 613, 616, 833 A.2d 829, 832 (2003) ("[I]f 'the plain meaning of the statutory language appears to undermine the purpose of the statute, we are not confined to a literal interpretation ....' " (quoting *Town of Killington*, 172 Vt. 182 at 189, 776 A.2d at 401)); *see also, e.g., Gallipo v. City of Rutland*, 173 Vt. 223, 235, 789 A.2d 942, 952 (2001) ("We should not construe statutes to reach unreasonable results manifestly unintended by the legislature."); *Lubinsky v. Fair Haven Zoning Bd.*, 148 Vt. 47, 49, 527 A.2d 227, 228 (1986) ("[T]he letter of a statute or its literal sense must yield where it conflicts with legislative purpose.").

11. As far as we have been able to determine, no written record of this hearing is generally available. *See* The Vermont Legislative Bill Tracking System, *at* http://www.leg.state.vt.us/database/leghist/details.cfm?MeetingID=5240 (last visited June 15, 2005) (noting that the hearing was not transcribed). We are informed that a tape recording is available for public inspection and copying through the Vermont Legislative Council at the Vermont State House. We rely on a transcription of portions of the hearing apparently prepared from that recording (identified as Tape 99–57) at Carpenter's behest and offered as Exhibit 8 to Defendant's Statement of Undisputed Facts in Support of Her Cross–Motion for Summary Judgment in the district court. That document and its supporting exhibits form docket entry # 18 of the district court proceedings in the instant case. Travelers argues, without citation to any supporting authority, that this record "does not constitute a proper legislative history and should be disregarded by this Court," but we are unable to imagine why. The transcription does not appear on its face to quote selectively from the proceedings or to omit any discussion germane to the meaning of "double recovery." Nothing barred Travelers from contesting the accuracy of the transcription below or from transcribing and offering in support of its motion any other portions of the hearing that it believed were relevant. Thus even if this history is not the sort of official record that we may assume is authentic, *cf.* Fed. R.Civ.P. 44(a), it remains uncontested evidence submitted in support of a motion for summary judgment.

*re Dep't of Bldgs. & Gen. Servs.*, 176 Vt. 41, 49, 838 A.2d 78, 85 (2003). The legislators' reactions to the amendment mirrored the witnesses' view of its meaning. Senator George Costes argued in support of the amendment that "it seems only fair that the [injured] person should be made whole." Immediately thereafter Senator Susan Bartlett, the chief Senate proponent of the legislation, agreed the amendment was justified because "if I've been paying that [UIM] policy and it[']s mine . . . . why . . . have I been paying for the policy if I can't collect on it?" and later commented that "if I have been paying for years my dollars and I happen to get hurt, I don't see why [my employer's] insurance company should get my money." Senator Janet Munt then asked Senator Bartlett whether the amendment would change the effect of the existing § 624(e), and Senator Bartlett replied, "Well with—with first person, yes.

It does . . . ." The Committee favorably reported the House's bill as amended, *see* Vt. Senate Journal, May 10, 1999, *available at* http://www.leg. state.vt.us/docs/2000/journal/SJ990512.htm, and it was passed in that form, *see* Vt. Senate Journal, May 12, 1999, *available at* http://www.leg.state.vt.us/docs/2000/journal /SJ990512.htm. The House acceded to the amendment adopted by the Senate.[12] *See* Act of May 12, 1999, No. 41, 1999 Vt. Acts & Resolves 765, 770.

In light of § 624(e)'s structure and this legislative history, we hold that the amended statute exempts UIM insurance proceeds from first dollar reimbursement except to the extent that those proceeds compensate an injured worker for more than the maximum recoverable loss that the worker has sustained.[13] The district

**12.** As the AFL–CIO representative informed the Senate Committee, the House had adopted a version of the amendment in the previous session that was never acted on by the Senate. The version adopted by the House in 1998 was far more sweeping in effect, providing that "[r]eimbursement required by this subsection shall not be applied to reduce any recovery from a third party except to prevent double recovery, and shall not reduce recovery of any benefits provided from a plan or policy that was privately purchased by the injured employee, including uninsured-underinsured motorist coverage payments, or any other first party insurance payments or benefits." H. 243, 1998–1999 Gen. Assem. (Vt.1998). For essentially the reasons given above, it is difficult to read "double recovery" in this version of the amendment to mean duplicative recovery, since this reading would again render the part of the sentence modified by "except to prevent double recovery" a nullity. And since this version of the amendment shielded UIM and other first party proceeds from reimbursement without *any* qualification, Travelers' proposed reading would make the House's use of the conjunctive "and" rather than "but" to introduce that provision inexplicable. Instead it seems, as the AFL–CIO rep-

resentative suggested to the Senate Committee the following year, that this was a more ambitious amendment which sought to protect *any* third party recovery from first dollar reimbursement until the injured worker was made whole, and which sought to shield UIM proceeds even from that cap. The AFL–CIO representative commented to the Senate Committee in 1999 that "we're not arguing that anymore because we understand even in the House [last] year when they passed it there was controversy about this third party [provision] . . . . They did have unanimity around the first party claim so we think this is a soft amendment and . . . we think it[']s fair[,] Madam Chair."

**13.** Given the legislature's intent, Travelers' reliance on the Vermont Supreme Court's pre-amendment decision in *Brunet v. Liberty Mutual Insurance Group*, 165 Vt. 315, 682 A.2d 487 (1996), to support its reading of "double recovery" is misplaced. In *Brunet*, the Vermont Supreme Court held that a workers' compensation insurer must be reimbursed on a first-dollar basis from any recovery from a third party tortfeasor that includes economic damages, even if that recovery consists in part of non-economic damages that workers' compensation does not cover. *Id.* at 317, 682

court, which reached the same conclusion, correctly reasoned that because the evidence before it did not show that there had been such a double recovery, Travelers was not entitled to the relief it sought, namely, a declaration that "pursuant to [§ 624(e)], as amended, [it] is entitled to reimbursement of the workers' compensation benefits it has paid to the defendant, Susan Carpenter, through April 28, 2000, from the proceeds of the defendant's settlement with her UIM insurer." Nor is Travelers entitled to the requested order that Carpenter pay over from her UIM proceeds the amount she had received through that date, or the requested order that the balance of the UIM proceeds be regarded as an advance payment by Travelers of future benefits. We therefore affirm this much of the district court's holding.

## IV. *Abstention*

■ The district court further reasoned that because the evidence before it did not show whether or not Carpenter had been fully compensated for her injuries, it was constrained to deny her cross-motion as well. The denial of this motion was the basis for the district court's later conclusion that it should abstain from further proceedings in favor of the state court action, which offered some promise of settling the question of the amount of Carpenter's total damages. That ruling, in turn, formed the basis for the final judgment that brings this case before us. *See* 28 U.S.C. § 1291; *Local Union No. 38, Sheet Metal Workers' Int'l Ass'n, AFL–*

*CIO v. Pelella,* 350 F.3d 73, 80 (2d Cir. 2003) (noting that we may review a denial of summary judgment "only . . . when . . . a final decision has rendered the case appealable"). Neither party has addressed the issue of whether abstention was proper; their arguments are restricted to the interpretive steps the district court took to arrive at the determination that issues remained before it that were better addressed in the state forum. *See Travelers I,* 313 F.3d at 102 n. 4. Because we have reached (by a somewhat different route) the same interpretive result as the district court, we do not have the luxury of ignoring the issue, but must consider whether the district court's disposition of the case was proper.

The *Brillhart* abstention doctrine allows a district court in its discretion to abstain from rendering a declaratory judgment when " 'the *questions in controversy* between the parties to the federal suit . . . can better be settled in the proceeding pending in the state court.' " *Wilton,* 515 U.S. at 282, 115 S.Ct. 2137 (quoting *Brillhart,* 316 U.S. at 495, 62 S.Ct. 1173) (emphasis added). Here, however, the question that formed the basis for the district court's conclusion that abstention was warranted was not, in fact, "in controversy." In her initial answer to Travelers' complaint, Carpenter included a prayer for relief requesting a declaration "that Travelers Insurance Company has no reimbursement rights to the proceeds from Ms. Carpenter's UIM policy until such time as the carrier establishes a 'double

---

A.2d at 488. In so holding, the court observed that "[t]his rule may seem inequitable where, as here, the third-party award does not fully compensate the injured employee." *Id.* at 318, 682 A.2d at 489. Travelers argues that this language shows that the Vermont Supreme Court has not interpreted § 624(e) to evince any concern with whether the worker is first made whole. The court's rejection of an equitable argument regarding the effect of reimbursement on third party recoveries under the pre-amendment text of the provision is irrelevant in light of our determination that the legislature, in subsequently amending § 624(e), clearly intended to distinguish recovery of first party insurance proceeds from recovery from a third party tortfeasor.

recovery' " and that "Travelers Insurance Company is not relieved from any of its obligation [sic] under Vermont Workers' Compensation Statute until such time as it establishes a 'double recovery.' " In her cross-motion for summary judgment, Carpenter requested the same relief. She argued that she was "entitled to a judgment as a matter of law on the scope of ... § 624(e), as amended in 1999" to the effect that "[t]he statute was amended to expressly protect Ms. Carpenter's UIM coverage from her workers' compensation carrier's potential reimbursement rights, unless it can be established that Ms. Carpenter has recovered more than her total losses arising out of the February 26, 1999 motor vehicle accident."

At no stage did Carpenter seek a declaration of non-liability that would have required the district court to determine whether there had already been a double recovery.[14] Travelers, for its part, staked its claims for relief on the grounds that the amended version of § 624(e) was no different in effect than the pre-amendment version, and alternatively that the pre-amendment version of § 624(e) controlled. It did not seek to show that there had been a double recovery as we have defined that term. The district court therefore had no basis to suppose that either party was invoking the court's jurisdiction to settle that issue; thus, rather than abstain in favor of a state proceeding that might settle the total loss issue, the district court could and should have simply granted Carpenter the limited relief she requested. *See, e.g., U.S. Underwriters Ins. Co. v. City Club Hotel, LLC,* 369 F.3d 102, 110 (2d Cir.2004) (affirming the district court's grant of a requested declaration that an insurer's notice of disclaimer was untimely as a matter of law, but declining to declare whether the insurer was therefore obliged to defend and indemnify the insured, because the insured did not request a declaration to that effect); *cf. Chappell & Co. v. Frankel,* 367 F.2d 197, 200 n. 6 (2d Cir.1966) (noting that entry of final judgment following denial of motion for summary judgment ordinarily disposes of all claims for relief requested in the complaint).

## CONCLUSION

For the foregoing reasons, we vacate the district court's judgment dismissing the case on abstention grounds and remand for entry of judgment in favor of Carpenter. In particular, the district court on remand should enter an order granting Carpenter the declaratory relief requested in her answer and cross-motion and consistent with this opinion.[15]

14. Carpenter suggested somewhat cryptically in a footnote in her cross-motion that "[a]ny decision by the Court that establishes a statutory right over Ms. Carpenter's UIM settlement should be subject to the pending lawsuit brought by Travelers [sic] in Washington Superior Court," and argued in opposition to Travelers' motion that "[n]o order for payment should be issued until Ms. Carpenter is able to fully litigate th[at] action." She repeated the latter point in the conclusion of her brief. While it is not entirely clear to us

what Carpenter meant by "subject to," these comments were not inconsistent with her primary contention on her own affirmative cross-motion that she was entitled to a judgment stating that she was not liable as a matter of law in the absence of a finding of double recovery.

15. We note that in her answer, Carpenter concedes, and requests a declaration, that Travelers is entitled to appropriate reimbursement from the $25,000 she received in settle-

ment of a claim against Webb. As Carpenter concedes in her brief on this appeal, the declaration she requests would allow Travelers to seek further reimbursement "once total damages are defined in state court" or elsewhere. Because the parties never litigated the amount of Carpenter's total damages in this action, the order we direct the district court to enter on remand is without prejudice to Travelers' ability to seek a determination of Carpenter's total loss, if necessary, in an appropriate forum.